Settle *vs.* Alison and others.

No. 35.—JOHN M. SETTLE, plaintiff in error, *vs.* HENRY L. ALI-
SON and wife and others, defendants.

[1.] Where it appeared that by the law and usage of the Courts in the State
of Virginia, the Clerk's certificate of the County Court, that a will was
duly admitted to *probate* and *record,* would be sufficient evidence of that
fact in that State: *Held,* that the same faith and credit should be given to
the records and judicial proceedings of the State of Virginia, when offered
in evidence in the Courts of this State, as they would have received in the
Courts of the State from whence the same were taken.

[2.] Where the record and judicial proceedings of the *County Court* of Meck-
lenburg County, in the State of Virginia, were offered in evidence, under
the Act of Congress, Abram Keen certified that he was the presiding Ma-
gistrate of Mecklenburg *County* : *Held,* that the presiding Magistrate should
have certified, that he was the presiding Magistrate of the *County Court* of
Mecklenburg County, from whence the record was taken.

[3.] When a subscribing witness to a written instrument, resides beyond the
jurisdiction of the Court, the regular mode to prove *its execution,* is to prove
the handwriting of the witness; but where a receipt or other written in-
strument, is more than thirty years old, *its execution* need not be proved to
admit it in evidence, although the subscribing witness may be living.

[4.] The declarations of a vendor, who has parted with the title to property,
are illegal, when sought to be given in evidence against his vendee, unless
it clearly appears he was the owner of, or in possession of the property, *at
the time* the declarations were made.

[5.] When the evidence *is* conflicting, in regard to the main point in contro-
versy between the plaintiffs and defendant, for the admission of *illegal* evi-
dence by the Court, which *might,* and probably did, decide the question in
favor of the plaintiffs, in the mind of the Jury, a new trial will be granted.

[6.] In an action of trover, for the recovery of slaves, in which there are
several plaintiffs of different ages, and the Statute of Limitations is relied
on, it is not error for the Court to charge the Jury, that they can find a ver-
dict in favor of those who are not barred by the Statute, and against those
who are barred; and the verdict of the Jury should specify who of the
plaintiffs they find for, and against whom they find; otherwise, the verdict
would be imperfect in not finding all the issues submitted.

[7.] When a Jury have rendered an imperfect verdict, by not finding all the
issues submitted to them ; as, where they found a verdict in an action of
trover, in favor of only four of the plaintiffs, when there were eight, with-
out finding either for or against the other four : *Held,* that after the verdict
had been received and recorded, and the Jury discharged from the farther
consideration of the cause, that it was error in the Court, after the expira-
tion of four days, to re-assemble the Jury and amend the verdict according
to what the Jury *then stated* it was their *intention* to find—such intention not
appearing on the *face of the verdict.*

Trover and conversion, in Monroe Superior Court. Decision by Judge Floyd, at September Term, 1849.

This action was brought by the children of Reuben M. Rainey and Catharine, his wife, formerly Catharine Cleaton, for a slave, Minerva, (and her issue,) that was sold by said Reuben M. to John M. Settle, alleging that said Minerva did not then belong to said Reuben M.; that they had been only *lent* to his wife, Catharine, during life, and after her death, by the will of Catharine's father, Thomas Cleaton, of Virginia, were to be equally divided between her children,

Catharine had died before suit. The testimony was voluminous and *very conflicting.* Thomas Cleaton made the will 25th February, 1818, and died in March after,

The plaintiffs below proved, that Reuben M. Rainey moved from Virginia to Georgia, about 1811 or 1812, and did not then bring with him Minerva; had just married; that the slave was never out of possession of Thos, Cleaton, after the marriage of Reuben M. Rainey, until the death of Cleaton, in March, 1818; that the executors divided his estate, 16th March, 1818; that on said 16th March, 1818, the executors delivered Minerva to Reuben M. Rainey, (in Virginia,) and took his receipt for her and a boy named Stephen; that Cleaton had but one slave, named Minerva, at Rainey's marriage, or up to testator's death; that Minerva was then some ten or twelve years old.

One witness supposed the age of Minerva, in 1827, to be fifteen or sixteen years; and that, in 1827 or '28, Rainey owned no other negroes but Minerva and Stephen.

One witness (Rainey's brother) knew Minerva, and states that she first came into the possession of Reuben M. between the spring of 1818 and spring of 1820; that Reuben M. went to Virginia, in the spring of 1818, and that Minerva was not then "in his possession at his residence in Greene County;" that in the early part of the winter of 1820, he was at Rainey's house and then first saw Minerva in his possession; that Reuben M. moved from Green to Jasper, early in 1821.

Eliz. King, (sister of Reuben M.) swore that she knew Reuben M. and Minerva, and knows that he came into possession of Minerva after witness heard of the death of Thomas Cleaton; she came to Georgia with Reuben M. and wife; they brought only

Settle *vs.* Alison and others.

one negro, Anaka; and after Cleaton died, he went back to Virginia and then brought Minerva (and Stephen.)

Defendant then proved the sale, and introduced the bill of sale from Reuben M. to John M. Settle, dated 15th December, 1828. The witness first knew Reuben M. in the forepart of 1818, *in* the County of *Jasper*, and at that time Reuben M. had *three* or *four* negroes.

Wm. Bradey swore, that he first got acquainted with Reuben M. " the 27th or 28th of December, 1817;" in March, 1818, he, Reuben M. lived in Jasper County; he lived in half mile of him, and he " did *not* go to Virginia during *March*, 1818 ; was not absent from home over a day or two at a time;" and Reuben M. had Minerva in possession when witness first knew him; *knows* that Reuben M. had the girl, Minerva, in his possession before March, 1818—the same girl he sold Settle in December, 1828; he, also, got acquainted first in *Jasper* County, in 1817.

Thos. Stocks knew Reuben M. from about 1810 or 1811 to 1816 or '17, when he moved from Green to Jasper; that during that time he had in his possession a girl named Minerva, and carried her with him ; supposes the girl, at the removal, was ten years old, and Reuben M. controlled said girl as his own ; thinks he came in possession of Minerva about 1815 or 1816.

Flewellen swore that Reuben M. moved to Jasper, last of December, 1817, and then had Minerva; he then had, also, Stephen, Beck, &c.

Plaintiff then, *after objection*, introduced the sayings of Reuben M. that Minerva (and Stephen) had been given to his wife and children, by her father, and could not be sold for his debts, &c.

Defendants below first objected to the copy of the will, because there was no copy of the probate, but only the Clerk's certificate that it was proved.

2d. That said will is not properly authenticated—the certificate purporting to be by the " presiding Magistrate of the *County*, instead of the Probate Court; " which the Court overruled.

3d. Settle objected to the receipt of Reuben M. for Minerva, because there was a witness to it, whose handwriting was not proved, and he not introduced, (and it appeared he was not dead.) This was overruled also, and paper let in.

4th. That after defendant below closed, plaintiffs offered the sayings of Reuben M.—which defendant objected to, because the

witness did not state *when* the sayings were made, or whether made *while* Reuben M. was in *possession* of said negroes.

5th. Objected to the charge of the Court, that if they believed any of plaintiffs were barred by Statute of Limitations, they could find *against* them and *for* those who were *not barred,* proportionably.

The Jury found *for* four plaintiffs, saying nothing about the other four.

Counsel for defendant moved for a new trial, on the foregoing grounds, and because the finding was against the weight of evidence, and against Law and Equity, and that the Jury had not noticed part of the plaintiffs. This motion was overruled, and defendant excepted.

On the fourth day after the trial, the Court allowed the Jury to be re-impannelled, to come in and amend their verdict, after the same had been recorded, to which counsel also excepted.

HARMAN and CHAPPELL, for plaintiff in error.

GIBSON, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

On the trial of this cause in the Court below, several exceptions were taken to the decision of the Court, which will be noticed in the order the same appear on the record.

[1.] First, the plaintiff below offered in evidence, a paper purporting to be a certified copy of the last will and testament of Thomas Cleaton, of Mecklenburg County, State of Virginia, which was objected to by defendant, on the ground that there was no copy of the *probate* of the will; which objection was overruled, and the paper admitted in evidence.

The County Clerk of Mecklenburg County certified, that on the 10th day of March, 1818, the last will and testament of Thos. Cleaton, deceased, was *presented into Court, and proven by the oaths of the witnesses thereto, and ordered to be recorded,* and that two of the executors qualified, and gave bond and security, as the law directs, and that certificate is granted them, for obtaining *probate* of said will in due form.

In this State, we think it to be the better practice to have the

probate of the will in *writing*, and the same entered on the minutes of the Court of Ordinary; but in the State of Virginia, it appears, that the certificate of the Clerk of the County Court, that the will has been admitted to *probate* and *record*, is sufficient. See *Tucker's Blackstone, vol.* 1, 418.   According to the Act of Congress, of 26th May, 1790, the records and judicial proceedings of the State of Virginia, are to have such faith and credit given to them in the Courts of this State, as they have, by law or usage, in the Courts of that State, from whence the records are taken.   *Prince*, 221.   Inasmuch as the certificate of the Clerk, as to the *probate* of the will, would have been sufficient to have admitted it in evidence in the Courts of Virginia, the Court below did not err in giving the same faith and credit to it, when offered in evidence in the Courts of this State.

[2.] The second objection made to the admissibility of the certified copy of Thomas Cleaton's will is, that the record was not properly authenticated, according to the Act of Congress, of 26th May, 1790.   The Act of Congress declares, that " the records and judicial proceedings of the Courts of any State, shall be proved, or admitted in any other Court within the United States, by the attestation of the Clerk, and the seal of the Court annexed, (if there be a seal,) together with the certificate of the Judge, Chief Justice, or presiding Magistrate, as the case may be, that the said attestation is in due form."   *Prince*, 221.   Here, the certificate of the Clerk is to a record from the *County Court* of Mecklenburg County.   The certificate of Abram Keen certifies, that he is the presiding Magistrate of the *County* of Mecklenburg, but does not certify that he is the presiding Magistrate of the *County Court* of Mecklenburg, from whence the record purports to have come.   Now, it is true, that the presiding Magistrate of the County of Mecklenburg may be the presiding Magistrate of the *County Court* of Mecklenburg County, but the certificate does not *affirmatively state that fact ;* and the Act of Congress, in our judgment, requires that the certificate should be from the presiding Magistrate of the *particular Court* from which the certified copy of the record is taken, and that fact should *affirmatively* appear on the face of the certificate.   We, therefore, are of the opinion, this objection ought to have been sustained by the Court below.

[3.] The third exception taken, is to the admissibility of a re-

ceipt given by Reuben M. Rainey, to the executors of Thomas Cleaton, for one of the negroes in controversy, dated 16th March, 1818, and witnessed by Edward Travis. It appeared, on the trial, that Travis, the subscribing witness, was living in the State of Tennessee. The defendant objected to the receipt being read in evidence, until its *execution* was proved, by proving the handwriting of the subscribing witness, it appearing he resided beyond the jurisdiction of the Court. The objection was over-ruled, on the ground that the execution of the receipt was suffi-ciently proved by one witness, who stated, " he felt confident that Reuben M. Rainey signed the same, and was also confident that the signature of the witness thereto was genuine." The rule is well settled, that where a subscribing witness to an instrument resides without the jurisdiction of the Court, the *execution* of the instrument may be proved, by proving the *handwriting* of the witness. This is a relaxation of the old rule, which required the subscribing witness to be examined by commission, if living, and residing abroad. *Barnes vs. Tromponsky,* 7 *Term R.* 262. *Watts vs. Kilburn,* 7 *Ga. Rep.* 356. Although we do not hold that this receipt was admissible in evidence, on the ground that its *execu-tion* was duly proved, yet we think it was properly admissible in evidence, on the ground that it was more than thirty years old, and, therefore, its execution need not have been proven at the trial. In admitting written documents in evidence, when more than thirty years old, the Courts do not go altogether upon the presumption, that the subscribing witnesses are presumed to be dead, but they adopt that limit of time, as a rule of practical con-venience, beyond which proof of the execution of written instru-ments will not be required, although the subscribing witnesses may be alive. 1 *Starkie's Ev.* 343. In *Doe vs. Burdett,* (31 *Eng. Com. Law Rep.* 18,) Lord *Denman* said, " the will is more than thirty years old, and, therefore, proves itself, without calling any witnesses, *even were they all alive."* See *Doe vs. Walley,* 15 *Eng. Com. Law Rep.* 150, and *Jackson vs. Christman,* 4 *Wend. Rep.* 282, to the same point. The receipt is shown to have come out of the hands of the individual to whom it was originally given, and who was properly entitled to the custody of it, and ought to have been admitted in evidence, without proof of its execution by the subscribing witness, being more than thirty years old.

[4.] The next objection is to the admission of the sayings of

Reuben M. Rainey, as testified to by Catharine Rainey. This witness stated, "she had often heard Reuben M. Rainey say, that the slaves, Minerva and Stephen, were brought from Virginia, and were given to Reuben M. Rainey's wife and children, by his wife's father, Thomas Cleaton, and could not be sold for Reuben M. Rainey's debts, or in any other way for said Rainey's benefit."

It does not appear at *what time* these declarations of Reuben M. Rainey were made, and in that view of the question, they were clearly illegal, as was ruled by this Court in *Carter vs. Buchanan*, 3 *Kelly*, 519, '20. The defendant in error, however, concedes that the declarations of Reuben M. Rainey were improperly admitted in evidence, but insists that there is sufficient evidence, on the part of the plaintiff below, to sustain the verdict, without the evidence of Catharine Rainey. The great question in issue between the parties on the trial was, whether the slave, Minerva, went into the possession of Reuben M. Rainey, as a gift, *before* the death of Thomas Cleaton, or whether he obtained possession of the slave *after* the death of Cleaton, under his will? Upon this point, the testimony is so much in conflict, that it is very difficult to determine on which side is the weight of the evidence.

[5.] The illegal evidence as to the sayings of Reuben M. Rainey, having been admitted by the Court as *competent* evidence, to the Jury, to determine that issue, *might*, and in all probability did, decide the question in favor of the plaintiffs. We cannot say, that the Jury were not influenced by the testimony of Catharine Rainey; and where illegal testimony has been admitted, which not only might, but most probably did, influence the mind of the Jury, a new trial ought to be granted. *Marquant vs. Webb*, 16 *Johns. Rep.* 89.

[6.] The next objection is, to the charge of the Court to the Jury. The defendant relied on the Statute of Limitations, and the Court charged the Jury, that they could find a verdict in favor of such of the plaintiffs as they might believe not to be barred by the Statute of Limitations, and against those whom they might believe to be barred by the Statute. It appears from the record, that some of the plaintiffs had been of age long enough to be barred by the Statute, and that some of them had not been of age a sufficient period of time, for the Statute to operate as a bar. The

charge of the Court was in accordance with the rule established by this Court, in *Thornton vs. Jordan*, decided at the last term in Milledgeville, and, therefore, constitutes no ground of error. It appears from the record, that the Jury found a verdict for four of the plaintiffs only, and did not find a verdict either for or against the other four—there being eight plaintiffs. The Jury ought to have returned a verdict, under the charge of the Court, in favor of such of the plaintiffs as were not barred by the Statute of Limitations, and against those who were barred by the Statute. A general verdict is a finding, by the Jury, in the *terms of the issue or issues referred to them*. *Tidd's Practice*, 798. One of the issues referred to the Jury was, as to the right of all the plaintiffs to recover from the defendant, or only a part of them. As this question was submitted to the Jury, it was their duty to have passed upon it. *Brocknay vs. Kinney*, 2 *John. Rep.* 211. *Van Benthuysen vs. Denett*, 4 *John. Rep.* 214.

[7.] The verdict was imperfect, inasmuch as it did not find all the issues that were submitted. It was as much the duty of the Jury to have found against the plaintiffs who were barred by the Statute, as it was to have found in favor of those who were not barred. The Court, however, after this imperfect verdict had been received and recorded, and the Jury dispersed, four days thereafter, permitted the Jury to re-assemble, and state what they *intended* to find by their verdict, and to amend it accordingly. To allow the Jury, after their verdict had been received and recorded, and they discharged from the farther consideration of the cause, and mingled with the parties, the witnesses, and their fellow-citizens generally; ascertained, perhaps, the wishes of one of the parties, the intention of the witnesses, or the state of public opinion in relation to their verdict—I say, to allow the verdict to be amended, under such circumstances, according to what the Jury might then state it was their *intention* to find, (such intention not appearing on the face of the verdict,) would be a dangerous and mischievous practice. In *Spencer vs. Goter*, (1 *H. Blackstone*, 79,) the Court refused to alter the verdict of a Jury, unless it clearly appears, on the *face of the verdict*, that the alteration would be agreeable to the intention of the Jury, and that the proper remedy was a new trial. Although no mischief may have resulted to the parties from the amendment of the verdict, in this par-

ticular case, under the circumstances stated in the record, yet we are unwilling, by our judgment, to establish such a precedent.

Let the judgment of the Court below be reversed, and a new trial granted.