No. 9.—WILLIAM J. BROWN, *et al.* plaintiffs in error, *vs.* DAVID B. BURKE, defendant in error.

[1.] If an exception be not taken at the trial, it cannot be heard in this Court. A witness testifying against his interest is competent.

[2.] The purchase of land by a parent in the name of a child, is presumptively an advancement; but that presumption is subject to be rebutted by evidence.

[3.] With the English statutes adopted here, we have adopted the construction placed upon them by the Courts of England, at the time of their adoption.

[4.] Under the construction which we give the statute 27th Elizabeth in this State, a subsequent sale, without notice, by a person who had made a settlement, not on valuable consideration, is presumptive evidence of fraud, which throws on those claiming under such settlement, the burden of proving that it was made *bona fide.* 5. *Pet.* 280.

[5.] In this State Equity causes cannot be tried by the Court, but must be submitted to a special jury. The Court cannot give its opinion upon the facts.

Action for recovery of land, in Baker. Tried before Judge ALLEN, at May Term, 1857.

David B. Burke instituted his action, under the form prescribed by the Act of 1847, against Benj. R. Smith and Samuel J. Smith, for the recovery of lot of land No. 281, in the 8th district of Baker county.

William G. Brown and the Smiths, filed their bill in Equity to enjoin this action. The bill set forth, that said lot of land was purchased by William Burke, the father of the

plaintiff, from one Seth C. Stevens, in the year 1844, who paid the full consideration money, but that titles to the same were executed by Stevens, to David B. Burke, the plaintiff, an infant son of William Burke. That the conveyance although absolute on its face, was intended for the use and benefit of the father, who went into possession and made improvements, and with his family resided on the place, until the year 1847, when he sold it to one William S. Kea; Kea sold it to his brother Francis D. Kea, in 1848; Francis D. sold in 1850, to William G. Brown, who on the 26th December, 1850, sold the same to the defendants in the action at law, and who are now in possession of the premises.

The bill further alleges that all the foregoing conveyances were *bona fide* and for valuable consideration, and that complainant Brown had no knowledge or notice of David B. Burke's claim or title, when he purchased from Kea.

The answer of David B. Burke, admits the conveyance of the premises from and to the different parties as set forth in the bill; and at the time of the execution of the deed from Stevens, that he, defendant, was a minor, about fifteen years of age. But he avers that he went with his father into possession of the land, and that the same was paid for by his own funds, and not by his father. He further charges that all the purchasers had notice of his title, and that the same was recorded in the proper office, within less than twelve months from the date of its execution, and that said deed passed from his father to Kea, and to all the subsequent purchasers successively. He denies that said land was conveyed by Stevens for the use or benefit of his father; admits the pendency of the action at law, and denies all combination, &c.

The action at law, and the Equity cause were tried together, and submitted to a special jury, on the appeal.

Complainants swore *Seth C. Stevens,* who testified, that William Burke contracted with him for the purchase of the land: Gave his notes for the purchase money and took a bond

for titles, and that he subsequently paid him for the land with his own funds, and took the deed to his son, David B. Burke, then a minor about fifteen years old, saying at the time, that he desired the deed made this way, so that he could not spend it, and that he might have a permanent home for himself and family. William S. Kea, had notice of David B. Burke's title, when he bought.

· *James George*, testified, that the Smiths took possession about the 1st of January, 1851; about seventy-five acres then cleared and in cultivation. William Burke put the first improvement on the lot; built the houses and cleared some thirty or forty acres of land; kept possession of it about three or four years before he sold it; heard him say while in possession, that he had given the lot to his son David, who was a minor, living with his father. William Burke is now dead. Heard Benj. R. Smith say that he had notice of David Burke's title before he purchased the lot.

*Francis D. Kea*, testified, that he is of opinion that he will not be liable on his warranty deed to Brown, if his title should fail; when he bought the land from his brother William S. Kea, he had heard of David Burke's title to the lot— He sold the land in the summer of 1850, to Brown, and took his note for the purchase money $1,117; $600 to be paid on the making of a deed, and the balance on time, and gave his bond for titles. That after this, and before he executed title, he wrote to Brown who resides in Wilkinson county and who was a stranger in the county of Baker, giving him notice of David Burke's title, and proposing to rescind the trade, if he desired it, which letter Brown admitted that he received; that when Brown came down in December, 1850, he again told him of this title, and offered to let him off, but Brown insisted on the performance of the contract, &c.

It was admitted that William Burke paid for the land by a transfer to Stevens, of a negro.

The jury found for the plaintiff, David B. Burke, the premises in dispute and cost of suit.

Defendants moved for a new trial on the following grounds:

1st. Because the Court erred in admitting the testimony of Francis D. Kea, a witness interested in the event of the suit.

2d. Because the verdict was contrary to law and evidence.

3d. Because the Court erred in charging the jury that defendant's were not entitled to recover, if they had notice of David Burke's title before their respective purchases, and that they were affected with notice if received at any time before the payment of the purchase money, unless they should believe from the evidence, that the deed was made to David B. Burke for the use of his father, and not as an advancement to David, in which event they should find for the defendants.

4th. Because the verdict was contrary to the charge of the Court.

The motion for a new trial was refused on all the grounds therein taken ; and defendants excepted.

R. F. LYON, for plaintiffs in error.

JNO. LYON, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The action at law and the bill in chancery to enjoin that action, and to set aside the title on which the plaintiff relied in his action at law, were submitted to the jury together by consent. This consent amounted to a dissolution of this injunction and the jury returned a verdict in favor of the plaintiff in the action at law for the premises in dispute. The defendant moved for a new trial on four grounds as set forth in the statement of the case.

[1.] The first ground is that the Court erred in admitting the testimony of Francis D. Kea, as a witness interested in the event of the suit. I do not find in the record that any objection was made to him as a witness on the trial. But, be that as it may, he conceived himself to be a disinterested

witness, but if he was mistaken in that, as he probably was, if the proof of notice was necessary at all in the case, he gave evidence against his interest and was therefore competent.

[2.] The second and third grounds in the notice may be considered together, for if the charge of the Court, as complained of in one of these grounds is in accordance with the law, and the jury found against it, the verdict ought not to stand ; but if the verdict be consistent with the charge, and the charge is in conformity with the law, it ought to be sustained. If either be contrary to law or the verdict be contrary to evidence, then the new trial ought to be granted. The decision of all these matters, depends, mainly, on the validity of the deed made to David Burke, against subsequent purchasers from William Burke for valuable consideration. The legal title was conveyed to David Burke, hence the question of notice is not very important in the consideration of the questions. The Court, in the latter part of its charge, submitted the correct view of the case to the jury. If the title was made to David in trust for the father, and the father subsequently sold to a purchaser for a valuable consideration, fairly and *bona fide*, then the complainants in the bill of Equity ought to have prevailed, whether they had notice of David's title or not ; but if the title was made as an advancement to David, then the verdict should be for the defendant to the bill. The counsel for plaintiff in error lays down the correct general rule, that if a parent purchases land, and takes the title in the name of the child, it is to be presumed as intended for an advancement. And we admit that he is right also in saying that the presumption in favor of an advancement may be rebutted by evidence of clear intention that the child shall take as a trustee. *Rider vs. Kidder,* 10. *Vesey, Jr.* 360 ; 15. *do.* 43 ; *Finch vs. Finch.* The rule would perhaps, have been more properly stated in this way, that whenever a man purchases land in the name of another and pays the purchase money, the land will be held by the person to whom the con-

veyance is made in trust for him who paid the consideration money: and then to have made the purchase by a parent in the name of a child an exception to the rule, for the reason that the law will presume that the purchase was made as an advancement to the child, and that that presumption may in its turn be rebutted by evidence that it was not so intended. But the authorities sustain the rule and exception, however stated. The evidence relied on in this case, to rebut the presumption that the conveyance to the son was an advancement, is:

First: That the father entered into possession of the land. It is in proof that the son, David Burke, was at that time only fifteen years of age, and was under the dominion of his father, of course. This circumstance is entitled to but little consideration.

Secondly: That at the time of the execution of the deed, William Burke, the father, directed the deed to be made to his son David B. Burke, saying that he desired the deed made that way so that he could not spend it, and that he might have a permanent home for himself and his family. This has much the appearance of a trust, but it was in proof also that he said, while in possession of the land, that he had given it to his son David. This evidence was submitted to the jury. There was no evidence of indebtedness by William Burke at the time, to any one, to show *mala fides*, in the transaction. If it was given in a way that he could not spend it, it must have been given as an advancement, and not as a trust. But again, it was given in that way that he might have a permanent home for his family and himself, but he did not say that the remainder was not for his son. *Finch vs. Finch,* 15. *Vesey Jr.* 51. These things cannot well arise in this case; the deed is positive and absolute on its face, and is presumptively an advancement. There is no declaration of a trust in writing, and this case must be regarded in the same light, as a suit by the father or his personal representatives, against the son, calling for a reconveyance. We do not think that

the presumption that it was an advancement, is sufficiently rebutted by the evidence, to authorize a decree, either for a perpetual injunction or a reconveyance.

[3] It is argued, again, that the deed from Stevens to David B. Burke was a voluntary conveyance so far as David B. Burke was concerned and a subsequent conveyance to a purchaser by William Burke was good against such voluntary title, whether the purchaser had notice or not. This is the correct rule, as established in England at this day, in constructions of the statute of 27th Elizabeth. But we do not consider that the rule was settled in that way at the time of our adopting the statute. That statute makes void all conveyances made for the intent and of purpose to defraud and deceive purchasers, who had purchased or might afterwards purchase, in fee simple &c., and for money, or other good consideration. According to the construction of that statute in England at this day, a purchaser for value, is protected whether he had or had not notice of a prior voluntary conveyance of the land. A treaty for the sale of land after a voluntary conveyance, according to the present construction there, connects itself with the voluntary conveyance and is held to be evidence of a fraudulent intent on the party who made the conveyance. The proposition to sell, is regarded as an effort to transfer for value and obtain money from a stranger for that which was conveyed without consideration. An actual sale is conclusive evidence of the fraud and invalidates the fraudulent conveyance. Whether the purchaser had notice is entirely immaterial. We have adopted the common and statute law of England so far as they were usually in force in the then Province of Georgia on the 14th day of may 1776, so far as they are not contrary to the Constitution, laws, and form of government established in this State. The statutes as they were known to be construed in England, at the time of the act, are what our Legislature is to be presumed to have adopted. What the constructions of the statute of Elizabeth was at that time was pretty fully ex-

Brown et al. vs. Burke.

amined and discussed in the case of *Cathcart vs. Robinson*, in the Supreme Court of the United States, 5. *Peters* 280. The conclusion to which that Court came, was, that the rule, as it now exists in England, "goes beyond the construction which prevailed at the American revolution, and ought not to be followed."

[4.] The Court proceeds to say that "the universally received doctrine at that day unquestionably went as far as this: A subsequent sale, without notice, by a person who had made a settlement, not on valuable consideration, was presumptive evidence of fraud, which threw on those claiming under such settlement the burthen of proving that it was made *bona fide*:" and such must be our construction. We must therefore hold in this case, that if William Burke had held the legal title to the land and conveyed to his son without other consideration than blood, the subsequent sale of the land was not conclusive evidence of fraud.

[5.] It was further urged in the argument, that the bill which brings these matters before the Court, being a proceeding in chancery, ought to have been determined by the Court. In England all Equity causes are decided by the Court Sometimes the Chancellor sends an issue of fact to a Court of law for trial. In this State, all Equity causes are tried by a special jury, under the direction of the Court as to the law. The Judge here cannot decide a fact, and cannot now give his opinion to the jury as to the preponderance of the evidence.

We think that the jury was warranted in finding as they did, under the charge of the Court, and are therefore of opinion that the judgment of the Court must be affirmed.

Judgment affirmed.