NANCY HILL, plaintiff in error, *vs.* JOHN A. BRUCE, for use, defendant in error.

1. The fact that a husband and wife live on certain land, and the husband returns and pays the taxes thereon, is not sufficient to make the land subject to a judgment against the husband, when the legal title is shown to be in the wife.

2. If the plaintiff in execution seeks to prove by the declarations of the husband that he paid for the land, and the title is therefore fraudulently in the wife, it should be made to appear that such statements of the husband, even if they be competent for-the purpose, *applied to a time when* his paying for the property and *taking* the title to his wife would constitute a fraud on his creditors.

3. In this case it does not appear *when* the declarations were made by the husband, nor *the time* of such payment by him, nor that he *then* owed the

debt on which the judgment is founded, or any other debt. And upon a review of the testimony as it appears in the record, we think there should be a new trial.

Husband and wife. Judgments. Lien. Evidence. Debtor and creditor. Before Judge HALL. Rockdale Superior Court. February Term, 1874.

On August 26th, 1874, an execution in favor of John A. Bruce, for use, etc., against Archibald Scott and Samuel Hill, principals, and Milton Wauldrop, indorser, based on a judgment obtained in the justice court for the four hundred and seventy-sixth district, on November 4th, 1865, was levied upon certain land as the property of Samuel Hill. A claim thereto was filed by Nancy Hill, the widow of the said Samuel. Upon the issue thus formed, the following evidence was introduced:

1st. Execution, with entry of levy thereon.

2d. Deed from Milton Wauldrop, executed on August 31st, 1858, conveying the property in dispute to A. T. Scott. Recorded February 14th, 1874.

3d. Deed from A. T. Scott, executed on March 27th, 1865, conveying the land to Archibald Scott. Recorded February 14th, 1874.

4th. Deed from Archibald Scott, executed on February 16th, 1866, conveying the premises, in consideration of $700 in cash, and of the natural love and affection of the father for the daughter, to the claimant. Recorded February 14th, 1874.

5th. Proceedings in behalf of Samuel Hill, in right of his wife, to have the land set aside as a homestead, filed November 9th, 1868.

The foregoing constitutes all the documentary evidence introduced.

A. T. Scott, for claimant, testified as follows: Claimant is the widow of Samuel Hill, deceased; is also witness' sister. In the year 1858 claimant and her husband came to Georgia from South Carolina, on a visit, and made arrangements with

witness to purchase the land in question from Wauldrop. He inquired from them as to where the money was to come from, and was informed that it would be the proceeds of the sale of claimant's land in South Carolina, which had been given to her by her father. Witness made the purchase, but took the title to himself to hold for claimant. It thus remained until some time in the year 1864 or 1865, when it was thought that witness would not live, and he conveyed the land to his father, Archibald Scott, to hold for claimant. Gave his individual notes to Wauldrop for the land, but they were paid off with the money of claimant.

Milton Wauldrop, for plaintiff in *fi. fa.*, testified that he has no recollection of A. T. Scott's ever having given his notes for the land; that A. T. Scott did not purchase the land from him, it was bought by Archibald Scott and Samuel Hill; that they gave their notes for the purchase money; that Archibald Scott refused for some time to sign the notes, giving as his reason that he had said he would not stand security for any one, but after talking over the matter he said he would sign the notes as principal, and let Hill sign as security. Witness traded the notes to Mr. Good.

...... Good testified that he got notes from Wauldrop signed by Archibald Scott and Samuel Hill; that he presented them to the former, and he finally paid them off.

William Reagan testified that he knew Samuel Hill from the time he came to the county, and that he lived on the land in controversy from that time until his death; that he came twelve or thirteen years ago, and perhaps before that; that he had heard Samuel Hill say often that he was sorry things had turned out as they had, that he had placed the money in the hands of Archibald Scott to pay for the property in question.

Joseph McCollin testified that he was present when Archibald Scott and Samuel Hill borrowed money from his brother to pay for the property in controversy; that the amount borrowed was $400 00 or $500 00.

The tax returns of Samuel Hill from 1860 to 1868 inclu-

sive, were introduced, showing the property in controversy returned by him.

The jury found the property subject. The claimant moved for a new trial because the verdict was contrary to the evidence. The motion was overruled, and claimant excepted.

A. C. PERRY, for plaintiff in error.

J. J. FLOYD, for defendant.

TRIPPE, Judge.

1. If the title to land be in the wife, it is not sufficient to subject it to the payment of the husband's debts because it appears that he and his wife live upon it, and he returns it and pays the taxes.

2, 3. The deed to this land was made in 1858 to A. T. Scott, the brother of Mrs. Hill, the claimant. He conveyed it to her father, and the father afterwards to her. Wauldrop, who executed the deed to A. T. Scott, testified that the father paid him for it, or rather that the father gave his notes for it, with Hill, the husband, as security, and that he transferred the notes to Good, who testified that the father paid the notes to him. It was in proof that Hill, the husband, said he placed the money in the father's hands to pay for the land. This last item of testimony is really about all that appears in the record which can be relied on to condemn the land to pay this judgment. Is it sufficient? It does not appear when Hill, the husband, made such a statement. The first deed, to-wit: from Wauldrop to the brother, was made in 1858. That was for the benefit of the claimant, and she and her husband went shortly thereafter into possession of it. Nor did it appear when the notes were paid to Good. The judgment on which this execution was issued was obtained *in November*, 1865. That was over seven years after the purchase from Wauldrop. Suppose that the husband did in 1859 or 1860 or 1861 pay for the land, or give the money to his father-in-law to pay for it, that would not make it subject

to a debt he contracted years afterwards. It was not shown that he was in debt at the time. Nothing appears that would make such a transaction a fraud upon his creditors. Perhaps there was more than is shown by the record. But by that we are bound. Besides all this, A. T. Scott testified that the land was bought for the claimant, that it was understood at the time that it was to be paid for from the proceeds of property she owned in South Carolina, where she then lived, and that it was so paid for. Under this want of evidence, taken in connection with the positive evidence in behalf of claimant, the court below should have granted a new trial.

Judgment reversed.

McCay, Judge, concurred.

Warner, Chief Justice, dissenting.

This was a claim case, and it appears from the evidence in the record that the judgment on which the execution issued that was levied on the land as the property of Hill, was obtained against him in March, 1863; that Hill had lived on the land for several years; had given it in for taxes as his property; that Hill, the defendant, said he had placed the money in Archibald Scott's hands to pay for the land. The claimant derived her title to the land under a deed made by Wauldrop to A. T. Scott in 1858, and a deed made by A. T. Scott to Archibald Scott in March, 1865, and a deed made by Archibald Scott to the claimant, in February, 1866, neither of which deeds were recorded until the 14th of February, 1874. The claimant is the sister of A. T. Scott and daughter of Archibald Scott. A. T. Scott says he took the deed to the land in his own name to hold it for his sister, and the question for the jury, under the evidence, was, *whose money* was it that paid for the land? Was the claimant's title, under the deeds which had not been recorded until after the judgment was obtained, good as against that judgment, or was it a family arrangement, made to defeat Hill's creditors? Assuming that the money which paid for the land, as

testified to by A. T. Scott, was the proceeds of land sold in South Carolina, given to her by her father, it does not appear that she had any *separate estate* in it, and as the law then stood, her husband's marital rights attached to it, and the proceeds thereof became *his money*, especially when reduced to possession. The jury found the property subject to the execution, and the court refused to grant a new trial.

In my judgment, there was sufficient evidence in the record to sustain the verdict, and especially so in this class of cases. According to the repeated rulings of this court, the discretion of the court below in refusing to grant a new trial, on the statement of facts disclosed in this record, should not be interfered with or controlled.