Oatis *vs.* Brown.

Mary A. Oatis, plaintiff in error, *vs.* Mary M. Brown, defendant in error.

1. Levy will not be dismissed on motion of claimant because it describes the premises as "one house and lot in Georgetown, known as the Oatis place," and does not specify the number of acres, the metes and bounds of the lot, or the street on which it is situated.
2. Where partners are sued on a partnership debt, and there is a regular return of service as to one, and no return of any kind as to the other, the latter may come in pending the suit, even as late as the regular trial term, and acknowledge that he has been duly served, waive copy and previous entry of service, and consent that the case then stand for trial. Judgment rendered at or after the second term succeeding the entering and signing of such acknowledgement on the declaration, will affect third persons the same as if the evidence of service had been complete at first.
3. So long as a debtor remains in possession of property which once belonged to him, and which his creditor is seeking to condemn as fraudulently conveyed, the *res gestæ* of the fraud, if any, may be considered as in progress; and his declarations, though made after he has parted with the formal paper title, may, by reason of the continuous possession which accompanied them, be given in evidence for the creditor against the claimant.
4. Where the debtor is a witness for the claimant, his declarations on relevant and material matters, made at any time preceding the trial, may be proved by the creditor to impeach him, the foundation therefor being first laid in cross-examination.
5. A juror will not be heard to destroy his own verdict by exposing the incidents of the jury room.
6. The issue being fraud or no fraud, and this being a second verdict against the claimant, the court below being satisfied, and the evidence not being plainly insufficient, the judgment refusing a new trial is affirmed.

Levy and sale. Partnership. Service. Judgments. Waiver. Debtor and creditor. Evidence. *Res gestæ.* Witness. Juror. Verdict. New trial. Before Judge Kiddoo. Quitman Superior Court. May Term, 1877.

Reported in the opinion.

B. S. Worrill ; J. L. Wimberly ; J. T. Flewellen, for plaintiff in error.

GUERRY & Son; A. HOOD; J. H. GUERRY, for defendant.

BLECKLEY, Judge.

The claimant is the mother of the defendant in *fi. fa.* Her title originated thus: The son purchased the premises in 1860, built a house and went into possession, his father and mother with him, he being a single man, and his object being to provide a home for his parents. Title was conveyed to him in 1863, in pursuance of his purchase. On the 10th of December, 1867, he executed a mortgage upon the property to one Lawson, to secure a note for over two thousand dollars, on which one thousand dollars had been paid. In this note he was principal, and there were two securities. The payee was one Pinkston, and Lawson held by transfer. The note was given for borrowed money.

On the second of March, 1869, the premises were sold by the United States marshal, on a general judgment from the circuit court (the date of which does not appear) in favor of a third person against the mortgagor, and was purchased by the mortgagee, Lawson, at the price of forty-five dollars. The marshal made a deed accordingly. Before this sale took place, Oatis and Lawson (mortgagor and mortgagee) had a conference, in which it seems to have been understood that Lawson was to make the purchase, and that any of the Oatis family were to be allowed to redeem on refunding the purchase money, with certain expenses, and paying off the mortgage. Shortly after the sale, Lawson visited the premises, and arranged with the father or mother of Oatis to remain in possession as his tenant. There was no agreement for rent, and no rent was ever paid. The father died in 1871, and the mother continued to reside on the place. On the 18th of December, 1872, Lawson conveyed the premises to her by deed, the consideration expressed being $1,618.00. This was done at the instance of a brother of Oatis, and the brother, according to his own evidence and that of Oatis; paid to Lawson all of the money, except about twenty dollars, which latter

sum another person advanced, at the request of Oatis, and it was subsequently refunded out of rents which accrued from the property in 1873, while Oatis was renting it out professedly as agent for his mother. According to the evidence of Lawson, the greater part of the money was paid by the brother, some by another brother, and a small balance by this third person, at the request of Oatis. The note and mortgage were surrendered, and by some means came into the hands of Oatis, who seems to have lost or destroyed them. The claimant removed from the premises to Alabama, in 1873, after which event, Oatis rented out the property for her benefit. Until about the time she removed, he appears to have resided on the property and in the family, except that at intervals he was absent engaged in teaching school, a part of the time in Alabama and a part of the time in Stewart county. He still called the place home, and was there frequently, though as he testified, he never considered himself in possession after the purchase by Lawson at marshal's sale. Much of the evidence tends to show that there was no substantial change in the possession from the time the house was built until 1873, except in so far as a change may have resulted from the verbal recognition, by one or both of the parents of Oatis, of Lawson as landlord. The final removal of Oatis to Alabama was in 1873, the same year in which his mother removed. His father and mother were without means of their own, and in 1869 Oatis was forced into involuntary bankruptcy. The theory of the plaintiff in *fi. fa.* is, that the money borrowed of Pinkston, for which the note secured by the mortgage to Lawson was given, was borrowed by Oatis for the benefit of his brother, and was so used ; that thus the mortgage debt was really the brother's debt; and that, hence, when the land was redeemed by the brother, even if the money used belonged to him, it was but the discharge of his own debt, and the land again became the property of Oatis, the deed being taken to the mother as a fraudulent cover to hide and

protect the property from his creditors.    Fraud or no fraud was thus the main issue.

The plaintiff's *fi. fa.* originated thus : On the 29th of May, 1867, a partnership, composed of three members (one of whom was the defendant, Oatis,) and a fourth person, made a promissory note for $3,060.00, due one month after date, payable to the plaintiff.    Upon this note suit was commenced in April, 1869, returnable to the next May term of the superior court.    The sheriff made a return of service upon one of the partners and upon the fourth person, and a return of *non est inventus* as to another of the partners.    As to the defendant, Oatis, he made no return whatever.    On the 6th of December, 1869, Oatis signed an acknowledgment on the declaration in these terms : "I hereby acknowledge myself to have been duly and legally served with the within process, and waive all copies and previous entry of service, consenting that this case stand for trial att his, November adjourned term, 1869."    Judgment was rendered at May term, 1872, against the partner served, and the defendant, Oatis, as principals, and against the executors of the fourth person (he having died), as security, for $2,598.50 principal debt, $798.29 for interest, with cost of suit.    On this judgment, the *fi. fa.* issued against all the defendants named therein.    In 1873, the levy now in question was made.    The property is described in the levy as "one house and lot in the town of Georgetown, known as the Oatis place," with no specification of the number of acres, the metes and bounds of the lot, or the street upon which it is situated.

1. At the trial of the claim, the claimant moved to dismiss the levy " because it did not sufficiently describe the property, in this : that it simply described the property as one house and lot in Georgetown, known as the Oatis place, without specifying the number of acres levied on, the metes and bounds of said lot, and upon what street it was situated."

The court overruled the motion.    Whether the levy may not be defective in other respects, we need not decide.    The

Oatis *vs.* Brown.

objection made to it was specific and particular. With that only did the court below deal, and with that only do we deal. The law prescribes no special terms to be employed in description. The property is to be "plainly described." Code, §3640. We do not think a court can hold, as matter of law, that "one house and lot in Georgetown, known as the Oatis place," is not a plain description. The premises might be so well known in the neighborhood as the "Oatis place," as to need no further designation. Such a question. is for the jury, as was ruled in 12 *Ga.*, 441, where the point, it is true, was not upon the levy but upon the sheriff's ad-. vertisement. The principle, however, is the same. Code, §3647. Besides, the claimant was too late with such an objection to be heard with favor, even if she could have been heard at all. Not only had she claimed in resistance to this levy, as a levy, but there had been a previous trial and verdict on the issue joined. There was a second trial upon the same issue, a new trial having been granted.

2. A question arose as to whether the acknowledgment of service made by Oatis came too late. That acknowledg-. ment had been upon the declaration or process more than two years before any judgment was rendered in the case. Ordinarily, a case is, or may be, carried to judgment at the second term of the court after service—that is, in about six months and fifteen days. The court could have ordered service upon Oatis if, pending the action, he could be found within the jurisdiction. 35 *Ga.*, 269; 51 *Ib.*, 203. Why, then, could he not voluntarily come in and acknowledge service? The acknowldgment which he signed was to the. effect that he had been duly and legally served. The sheriff had omitted to make any return concerning him, and the acknowledgment seems to have been intended to supply that omission. There is no pretense that any fraud upon third persons or upon the law was in contemplation. Oatis himself was satisfied with the service, and the claimant has no good reason to complain of it.

3. Let it be remembered that the possession of Oatis com-

menced in 1860, that the judgment seeking to condemn the property was rendered against him in May, 1872, and that the evidence tends to show, that he did not fully separate himself from the possession until 1873. It was in 1869 that the property was sold at United States' marshal's sale, and bought in by Lawson; and it was in December, 1872, that Lawson conveyed to the claimant, the mother of Oatis. At the trial, evidence was admitted, over the claimant's objection, of declarations made by Oatis, to the effect that he had paid Lawson and got the place back; and of his previous declarations, to the effect that he was to redeem the place, that it only depended upon Lawson's life as to whether he would redeem and get the place back, that he only had Lawson's word for it. The witness could not give the dates of these declarations, but said they were made while Oatis was in possession. On cross-examination, he stated that he could not say positively that Oatis was in possession, but that he never knew anything of his going out of possession until 1873. At the time Oatis declared that he had paid Lawson and gotten the place back, he was on his way to supper at the house and lot in dispute. There is in the record enough evidence to warrant the conclusion, that all the declarations to which the witness testified were made pending the possession which commenced as far back as 1860, and continued without actual, visible change until the early part of 1873. The question is, whether such declarations were competent evidence in behalf of the judgment creditor against the claimant. The declarations may be considered as qualifying and explaining the possession which accompanied them ; and they may also be considered as a part of the *res gestœ* of the fraudulent enterprise which (as the plaintiff contends) was in progress when they were made. If there was a fraud perpetrated, it was not at an end so long as Oatis remained in possession. Cowen & Hill's notes to Phillips' Ev., vol. 2d, pp. 602, 603, 652, 662, notes 452, 481. See, also, Bump. F. C., 549 ; 2 Wharton's Ev , §§ 1166, 1167. Compare 54 *Ga.*, 332.

4. Oatis, the defendant in *fi. fa.*, was a witness for the claimant. On cross-examination he was asked whether, at certain times and places, in 1868, 1872 and 1873, and in the presence of a certain person, he had not made certain statements. He denied making them. This person was afterwards introduced by the plaintiff, and testified that he did make them. They were to this effect : that while he, Oatis, was legally bound for the Pinkston debt, (the debt secured by the mortgage to Lawson) it was really the debt of his brother, who would come over and pay it ; that the money paid by his brother to Lawson for the house and lot was the repayment of a sum which he, Oatis, had lent to his brother with which to purchase a plantation in Alabama ; and that he, Oatis, had paid the Lawson debt and gotten his property back. The object of this testimony was to contradict and discredit Oatis as a witness. Its admissibility for that purpose seems to us as free from doubt as anything in the law of evidence can be. To refer to authorities upon such a point would be superfluous.

5. The thirteenth ground of the motion for new trial relates to improper conduct by the jury, and is founded on an affidavit made by one of the jurors. That affidavit states, that two of the jurors went aside and conversed privately—then returned and said they knew all about the case before they heard any of the evidence, that they did not wish to consider the evidence, and that they believed Oatis was always in possession of the property. It further states that the jury did not read over the depositions, or consider the testimony of the claimant, but found their verdict upon the statement of the two jurors, and that the deponent believes that had he properly considered the testimony, he would not have consented to the verdict rendered, but would have returned a verdict for the claimant. That a juror will not be heard to impeach the finding of himself and his fellows, cannot be better settled than it is.

6. Taking the evidence as we find it in the record, there is room for much doubt as to the correctness of the verdict.

Rut we cannot set it aside on a mere doubt. It is a second verdict in favor of the plaintiff (see 55 *Ga.*, 416), and the main question being frand or no fraud, the jury had better facilities for solving it than we have. The presiding judge, after granting a first new trial, refused a second. It is not manifest that he abused his discretion, since there is some evidence on which the verdict can rest.

Cited for the claimant: (levy) Code, §3640; 10 *Ga.*, 74; 27 *Ib.*, 200; (acknowledgement of service) 25 *Ga.*, 292; 29 *Ib.*, 591; (declarations after parting with title) 3 *Kelly*, 513; 8 *Ga.*, 201; 15 *Ib.*, 203; 55 *Ib.*, 416.

Cited for plaintiff in *fi. fa*: (levy) 5 Wheaton, 339; 12 *Ga.*, 431; *Scolly vs. West*, this term; (fraud) Code, §2751; 22 *Ga.*, 574.

Judgment affirmed.