## Towner *vs.* Thompson *et al.*

The court having admitted some evidence illegally, it was not error, in view of the whole case, to grant a second new trial.

May 4, 1888.

Evidence. New trial. Before Judge Roney. Glascock superior court. August term, 1887.

On January 21, 1885, John Thompson and Rebecca Thompson and their children brought complaint for land against Walter Towner. The land was described as part of the land originally covered by the back-water of the Towner mill-pond, containing six acres, more or less, on the east side of Joes creek.

On the trial, the plaintiffs put in evidence a deed from Benjamin Coxwell to Richard Powell, dated October 1, 1825, conveying a certain tract of land on the waters of Joes creek; also a deed from Richard Powell to plaintiffs, dated September 5, 1862, in which the land was described (among other boundaries) as bounded by Joes creek on the west. It appeared that if the lines were run according to the description in these deeds, Joes creek would be the western boundary of the land, and the premises in dispute would be covered by these deeds, being on the east side of the creek. Richard Powell was shown to have been in possession of the land in 1838 and to have so continued until 1862, when he sold to the plaintiffs; and it was shown that this line was acknowledged by one Roberson, who owned land on the other side of the creek, during the time he was in posses-

sion. The defendant claims under Roberson. In 1838, John Yarbrough built a dam across the creek, which backed water on this land on the east side, covering the land in dispute. Powell, who then owned the land on the east side, gave permission to back water in consideration of being furnished water to run a turning-lathe, but did not sell the land itself, and it was not claimed by the party building the dam. In 1862, John Thompson went into possession of the Powell tract of land, which was deeded to him and his family, and remained in possession until 1880, when he was turned out by the sheriff. In 1871 the dam was washed away, and in 1872 he fenced in about an acre of the land in dispute, making crops on it, and never was interfered with until so turned out. He carried the chain when the Absalom Jackson survey (hereafter referred to) was made, and no objection was made to running the line to high water mark on the east side of the creek. According to the evidence, if the line should be run to high water mark of the mill-pond, the plaintiff's tract would not cover the land in dispute.

The defendant showed that he held under a chain of title from Fred Roberson, beginning January 5, 1845, when Roberson deeded to Latimore, who deeded to Kent afterwards; and defendant held under a sheriff's deed, dated January 2, 1855, to land sold as the property of Kent. These deeds spoke of the land covered by them (so far as is material to the questions made) as the Roberson mill-tract on the waters of Joes creek, adjoining Powell on the east; and the sheriff's deed described it as the land known as the Roberson mill-tract on the waters of Joes creek. The defendant also introduced a written agreement made between Frederick Roberson and John Yarbrough on one side, and Richard Powell on the other, which recited that Roberson and Yarbrough

had purchased of Powell a certain mill-seat on Joes
creek, and that in consideration of it Powell should have
certain water privileges from the pond, etc. to him and
his heirs and assigns forever.    It was dated March 8,
1838.    Also a plat purporting to have been made by
Absalom Jackson, county surveyor, in the presence of
Richard Powell and Eli Blenkenship, according to which
the Roberson mill-tract now owned by defendant ex-
tended to high water mark on the east side of Joes
creek and covered the land in dispute.    Also a certain
writing signed by John Thompson, dated March 6, 1880,
which recited that the land to high water belonged to
defendant, and that Thompson had the privilege to keep
a fence below high water mark to keep stock off his
wheat until harvested.

The defendant further showed that, in 1862, Powell
told him that the land in dispute belonged to the Rob-
erson mill-tract; that the plat was made in 1856, was
correct, and the surveyor who made it was dead ; that
John Thompson himself marked the corner between the
Thompson and Roberson tracts, and agreed to the land
line as marked by rocks, which would make the Roberson
tract cover the land in dispute, though he said the
creek was the line ; that he put a fence on the line when
the dam broke in 1871 or 1872, without asking defend-
ant's permission; that the fence was there to make a
lane for his cattle; that he did not have more than an
eighth of an acre in cultivation, and defendant did not
disturb him from the time the dam broke until 1880,
when the sheriff put defendant in possession, and in that
year he told Thompson the land was his own, and
Thompson replied that the creek was the line and the
law would have to settle it; that defendant could not
have used the mill without backing water on this land,
and without this land the mill would have been useless ;

that at the time Powell's deed to plaintiff was made, the water was on the land in dispute, and Powell made no mention of claiming this land; and that in 1880, Thompson told one Griffin that the land belonged to Towner and he would have no more to do with it. By one Sarah Ann Walton defendant showed that, about forty years before the trial, she heard Powell say that the land in dispute was on the Roberson mill-tract.

The jury found for the defendant. The plaintiff moved for a new trial on the following grounds:

(1) Because the verdict was contrary to law and evidence.

(2) Because the court admitted evidence of a conversation between defendant and Powell in 1862 about the line; Powell being dead and having no title to the land.

(3) Because the court admitted the agreement of Thompson in reference to the position of the land.

(4) Because the court admitted the Absalom Jackson plat.

(5) Because the court refused to give the following charge: If Mr. Thompson, his wife and children have shown title, they cannot be defeated by the sayings, assertions or declarations of Mr. Powell that he had sold the land to Mr. Towner, and such declaration of Powell could convey no title.

The court granted a new trial, this being the second grant to the plaintiffs; and the defendant excepted.

THOMAS E. WATSON, for plaintiff in error.

JAMES WHITEHEAD, by J. H. LUMPKIN, *contra.*

BLECKLEY, Chief Justice.

Thompson derived title, if he had any, to the premises in dispute from Powell, and Towner gave in evi-

dence certain admissions of Powell. If Powell made these admissions after his conveyance to Thompson, and after parting with possession, they were not proper evidence against Thompson in Towner's favor. *Settle vs. Alison,* 8 *Ga.* 201. It does not affirmatively appear in the record that the particular admissions referred to in the fourth ground of the motion for a new trial were made before Powell conveyed, or that he was in possession at the time of making them. This being so, we cannot say that the court did not err in receiving them in evidence.

And the court has pronounced by its own judgment that a new trial ought to be granted. We think it was warranted in so doing, although a previous new trial had been granted at the instance of the same party.

Judgment affirmed.