EMMA A. MILLER v. JAMES HANLEY.

*Execution—Alias writ—Replevin—Justification of officer—Fraudulent conveyances—Evidence.*

1. Where an officer seeks to justify under an *alias* execution issued after the return-day of the original writ, and while it is in the officer's hands with a return *nulla bona* indorsed thereon after the release of a levy upon real estate which was found not to belong to the judgment debtor, it is in the power of the court to direct a return of the original execution *nunc pro tunc*, and thus cure the irregularity in the issuance of the *alias* writ.

2. An objection to an officer's justifying his seizure of property under an execution, because no notice of such defense has been given, is waived if not made in the trial court; citing *Frankel v. Coote*, 41 Mich. 75.

3. When a debtor undertakes to assign and convey his property in recognition of an indebtedness to his wife, originating 25 years before, no account of which has been kept, no evidence of the debt given, and no interest or principal paid or requested, the financial condition of both parties for the entire period is a proper subject of inquiry, and the broadest latitude should be allowed to the judgment creditor.

Error to Wayne. (Reilly, J.) Argued December 2, 1892. Decided December 22, 1892.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*James H. Pound,* for appellant.

*John G. Hawley,* for plaintiff, contended:

1. There is no authority for issuing an *alias* execution until the original has been returned.

2. Although a levy cannot be made under an execution after the return-day, yet, if a levy has been made, a sale may be made afterwards; citing How. Stat. § 7696; and the writ continues in force in the hands of the sheriff, even after he has gone out of office; citing *Vroman v. Thompson*, 51 Mich. 452; and a sale

may be made more than five years afterwards; citing *Ward v. Bank*, 46 Mich. 332.

3. The doctrine contended for is fully sustained by the authorities, which allow nothing to stand as a basis for an *alias fi. fa.* except the return of the first writ by the officer to whom it was issued; citing *Bishop v. Spruance*, 4 Harr. (Del.) 114; *Cairns v. Smith*, 8 Johns. 337; *Corning v. Burdick*, 4 McLean, 133; *Cutler v. Colver*, 3 Cow. 30; *Sutton v. Mayre*, 81 Va. 329; *Perrien v. Fetters*, 35 Mich. 236.

McGRATH, C. J. Replevin is brought for goods levied upon to satisfy a judgment against plaintiff's husband.

The judgment is dated June 13, 1891. An execution was taken out on that day, and a levy made upon certain real estate, but it was afterwards found that the real estate levied upon did not belong to the debtor, and the levy was released. A return *nulla bona* was then (August 25, 1891) indorsed on the writ by the sheriff, but was not signed. While this writ was in the sheriff's hands, an *alias* writ was issued, and the goods in controversy were levied upon under the *alias* writ. Before the *alias* writ was taken out, the sheriff had been requested to make a return of the first writ, and had promised to do so. The original writ was produced on the trial. The court admitted the *alias* execution in evidence, but at the close of the testimony directed a verdict for plaintiff; and it is now contended that the direction was right, for the reason that the *alias* execution was illegally issued, in the absence of the return of the original writ.

In *Farmers' & Mechanics' Bank v. Kingsley*, 2 Doug. 389, it was held that a second execution could not properly issue while a former one was outstanding, with a levy upon personal property unaccounted for, as the levy was *prima facie* evidence of satisfaction of the debt. But it was also held that such levy was not conclusive evidence of satisfaction, and that a plea setting up such a levy, if false in fact, might be traversed; or if a levy had been made, but

not followed by sale and satisfaction for any sufficient reason, the levy might be confessed, and its legal effect repelled by an allegation of any fact which by law should withdraw it from the operation of the general rule. Although the discussion in that case was thorough, and the opinion elaborate, no mention is made of the naked question raised here.

In *Spafford v. Beach*, 2 Doug. 150, it was held that a levy on real estate is not, as is a levy on personal property, a *prima facie* satisfaction, and that the issuing of an *alias fi. fa.*, while there was a levy by virtue of a former execution, on real estate, which remained undisposed of, was therefore a mere irregularity.

It is said here, by counsel for plaintiff, that "the reason for this rule is that a defendant is not to be exposed to the risk of having the same judgment collected from him twice by legal process." But the life of the execution had expired, and no levy was in force. The execution was in the hands of the officer, with a return of the failure to satisfy it in whole or in part indorsed thereon. The officer had failed to complete the return and discharge his duty. The issue of the *alias*, in the absence of a return of the former execution, was undoubtedly an irregularity, but it was in the power of the court to direct a return *nunc pro tunc*, and that course should have been taken.

It is next urged by plaintiff, in support of the ruling, that the plea was the general issue, without notice of justification under the writ; but this point was not raised in the court below, and must be deemed to have been waived. *Frankel v. Coots*, 41 Mich. 75.

Appellant complains of the rulings of the court upon the admission of testimony.

Judgment on *cognovit* was entered against plaintiff's husband, June 13, 1891, for $11,509. In July, 1890, bills of sale were executed by the debtor,—one to his son

of a yacht, in which the consideration named was $1,250;. and another to his wife, the plaintiff, of all of his household furniture, beds, bedding, linen, silver and plated ware,. wearing apparel, books, music, musical instruments, paint-- ings, engravings, and family stores, "belonging to him,. the said William B. Miller, and now in his possession at No. 85 Forest Ave. east, in the city of Detroit." The place named was the family residence of William B. Miller and plaintiff. The goods remained there, and the said parties continued to reside there, until the time of the levy. Anna De H. Morgan was the creditor.

William B. Miller was sworn for plaintiff, and testified that he told the sheriff that it was his wife's property. When asked how it came to be his wife's property, he said:

"I gave her a bill of sale of it. I don't remember when this bill of sale was delivered to my wife. I kept it in the safe at the gas office for a time. Just the date it was given to her I don't remember, but it was before the levy was made; how long I can't say. It was some months before. I think she kept it in her desk at the house. At the time this bill of sale was made to my wife, I was in. debt to her, principal and interest, four or five thousand dollars. She had let me have money 25 years ago, to invest in business,—$2,300,—when we lived in Covington.. This money came from her father's estate. There were nine or ten children, and she got an equal share,—$2,400,. as I remember it; and she loaned $2,300 of it to me. I never paid her any of the principal or interest thereof. She also let me have $400 in the winter of 1890, some- where in 1889 or 1890; I don't remember just exactly. I know where she got it; from Thomas Dean, $400. I saw the check. It was payable to her order. That money was. a loan, to be returned when she wanted it."

It further appeared that no note, writing, or other evidence of debt had been given, no account kept, and that the wife had never made any request or demand for principal or interest, or for security therefor; that his wife

knew nothing of the execution of the bill of sale until its delivery, some time afterwards.

In the course of the cross-examination, defendant's counsel sought to show what property had been owned by Miller since the indebtedness to his wife originated; what the profits of his business were; what his earnings were when employed upon a salary; and his wife's knowledge, from time to time, of his business ventures and investments. The court excluded the testimony, and, we think, erroneously.

Counsel for defendant asked the witness whether Mrs. Morgan was here in 1888 to see him about his indebtedness to her. It was excluded, on the ground that it was immaterial. "*Counsel for defendant:* I want to show— *Court:* I have excluded it."

Mrs. Morgan, the plaintiff in execution, was sworn in her own behalf, and asked the following question:

"*Q.* Will you state whether or not you have ever had any conversation with W. B. Miller regarding the ownership of this furniture? (Objected to as immaterial.)

"*Court:* I will exclude it.

"*Q.* Will you state as to whether, during the year 1891, Mr. Miller said anything to you about the ownership of this furniture? (Objected to as immaterial. Excluded.)

"*Q.* Will you state whether or no during the past three years you have seen the plaintiff, Mrs. Miller, at all?

"*A.* I saw her last summer at our house; she was there to tea and lunch.

"*Q.* At that time, did you have any conversation with him.

"*A.* No, sir.

"*Q.* You had no conversation—

"*Court:* I will exclude that.

"*Q.* Now, you have known the plaintiff in this suit for a number of years?

"*A.* Yes, sir.

"*Q.* Will you state, in this conversation or interview with her, what, if anything, she said to you about the ownership of any property by her? (Objected to.)

"*Court:* I will exclude it.

"*Q.* What, if anything, did she say regarding the gift or loan of any money by herself to her husband? (Objected to as immaterial.)

"*Court*: I will exclude it.

"*Q.* Did she ever tell you anything of her circumstances, and what, if any, property she had? (Same objection, ruling, and exception.)

"*Q.* Or what she had done with any property she had? (Same objection, ruling, and exception.)

"*Q.* Will you state whether you ever heard any statement made by Mr. Miller or his wife regarding the ownership of furniture levied on in this case? (Same objection, ruling, and exception.)

The exceptions taken are omitted.

If there was any reason why answers to the questions asked this witness should not have been allowed, it was not that they were immaterial, but that no proper ground had been laid for them, and the reason why no proper ground had been laid was that the court would not permit it to be done. It was clearly material to the issue to show that both W. B. Miller and plaintiff had made statements relative to the ownership of the very property in dispute inconsistent with the claim now made.

According to the testimony of plaintiff, it was 25 years since she received the $2,300 from her father's estate, and loaned it to her husband. The $400 had been received from her husband's employer, who resided in the East, and who was sick and cared for at the house of the plaintiff and her husband. The house was supplied by the husband, and the sick man paid no board, but, after his return home, sent a check in March, 1890, for $400 payable to the order of plaintiff, which she turned over to her husband. Plaintiff and her husband also claimed that the furniture was given to plaintiff by her husband when he purchased it, some time prior to the execution of the bill of sale. It appeared also that the husband had, in 1891,

offered to execute a mortgage upon this furniture to one Dean to secure a debt.

In this class of cases a wide latitude of inquiry is always given, especially upon cross-examination of the execution debtor and his assignee. When a debtor undertakes to assign and convey away his property in recognition of an indebtedness to his wife, originating 25 years before, no account of which has been kept, no evidence of the debt given, and no interest or principal paid or requested, the financial condition of both parties for the entire period is a proper subject of inquiry, and the broadest latitude should be allowed to the judgment creditor.

Even upon the facts shown, the case should have been submitted to the jury, and the court erred, not only in directing a verdict, but in restricting the inquiry.

The judgment is reversed, and a new trial awarded.

The other Justices concurred.