# BOWDEN *v.* SPELLMAN.

Opinion delivered June 9, 1894.

59 251
59 613
59 251
62 278
59 251
74 553

1. *Practice on appeal—Bill of exceptions.*

Refusal by the lower court to give an instruction asked will be presumed correct where the bill of exceptions merely contains a statement that "evidence was introduced tending to show the following state of facts," without alleging that the statement contains all of the facts necessary to explain the bearings of the court's ruling.

2. *Fraudulent sale—Rescission—Restitution.*

Where a debtor fraudulently sold his stock of goods, and assigned the purchase-money notes as collateral security to creditors who were ignorant of the fraud, such creditors, upon discovering the fraud, are not entitled to have the sale avoided unless they return, or offer to return, the notes before or at the trial.

3. *Evidence—Using writing to refresh memory.*

A witness may refresh his memory from a writing not made by him, if he is satisfied from his own knowledge that it is correct.

4. *Evidence—Declarations of vendor.*

Declarations of a vendor of goods as to their value, made after the sale, but while the goods are in his possession, are admissible against his vendee in a suit by the vendor's creditors to impeach the sale for fraud.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*Rose, Hemingway & Rose* for appellant.

1. It was error to refuse to allow witness, Bowden, to refresh his memory by reference to the memorandum which he had, and which he proposed to use for that purpose. 1 Gr. Ev. sec. 436.

2. The court erred in allowing witness, Muse, to state conversations had between him and Joe N. Martin as to the value of the goods, etc., sold after the date of the sale, and the reasons for making the sale. 9 Ark. 92; 10 *id.* 429; 5 *id.* 13. It was not shown that Martin

was in possession as the agent of Bowden; and if it had been, his declarations would not have been competent. 14 Ark. 105; 49 *id.* 217.

3. The third instruction asked by plaintiff should have been given. 30 Ark. 453; 47 *id.* 309; 32 *id.* 346.

4. For the same reason the seventh asked by defendant should have been refused. Although the St. Louis firms may have received the notes without knowledge that they were given for the goods sold to Bowden, it is clear that they could not hold on to them after they discovered that fact. Before attaching they should have surrendered them, or offered to do so. 5 Ark. 395. This "is a rule founded in natural justice, and requires that the offer shall be made by the purchaser to his vendor upon the discovery of the defects for which the rescission is asked." 6 Wall. 257; 15 Ark. 286. In case of fraud the party injured must, "within a reasonable time after the fraud comes to light, make his election to rescind (if he designs to do so), and proceed to rescind by a return, or an offer to return, whatever he may have received, under the contract, of any value whatever to either party." 17 *id.* 240; *Id.* 603; 20 *id.* 438; 25 *id.* 204; 31 *id.* 151. The offer to return, "to be effective, must be made promptly upon the discovery of the fraud." 38 *id.* 334; *Id.* 351; 35 *id.* 483.

*S. R. Cockrill* and *Geo. H. Sanders* for appellee.

1. The bill of exceptions does not purport to contain all the evidence, nor the substance of it. This is fatal. 44 Ark. 74–76; 54 *id.* 159–162. It is not shown that the creditors had an opportunity to surrender the notes; nor is it shown that a proper offer to return the notes was not made.

2. The third prayer asked was wrong, in any event. The creditors had no opportunity to surrender the notes. The law allows the creditor to hold the notes, without

special excuse, until the trial. An offer at the trial is sufficient. 58 N. H. 154; 22 Pick. 18; 120 Ill. 573; 47 Mich. 193. If the notes were not negotiable, there was no necessity for returning the notes. 22 Pick. 18.

3. Muse's testimony was relevant and admissible. It tended to throw light on the intent of the Martins in making the sale. 50 Ark. 318, 319. What Martin said was admissible to show his intent in the transaction. 46 Ark. 127.

4. It was not error to refuse to allow Bowden to refresh his memory from the list made by Martin. The memorandum was not put in evidence. It was not shown that the witness ever saw it before, or knew of its existence until he desired to use it; and the only reason he assigned for his belief in its correctness was that it had been made out by one of his accomplices in the fraudulent sale. It is not even made to appear when Martin made the memorandum. For aught that is shown, it may have been made out by Martin from memory, on the eve of the trial, after the goods were lost or destroyed. None of the numerous cases cited in the note to sec. 436, 1 Greenleaf on Evidence, which is relied on by appellant, sustains the use of the memorandum under such circumstances.

There are two other reasons why it cannot be said the court erred in ejecting the memorandum.

1st. The witness had been allowed to examine the memorandum, and that was all that could be asked. He had no right to read it as his testimony.

2d. The ruling could not have been prejudicial, because the jury found that Bowden was not entitled to recover damages even for the property which the answer admits was levied upon, or as to that which Bowden was permitted to enumerate. If he could not recover for that actually enumerated by him, he could

have sustained no prejudice from not being allowed to enumerate other property in the same category.

*Rose, Hemingway & Rose* for appellant, in reply.

The bill of exceptions in this case begins as follows: "Be it remembered that on the trial of this cause evidence was introduced tending to show the following state of facts." The facts are then set forth, as shown in the original abstract filed heretofore. The thirteenth rule of this court provides that "if the facts are undisputed, they shall be stated as facts, and not as evidence; and if disputed, it shall be sufficient to state that evidence was adduced tending to prove them, instead of setting out the evidence in detail." The counsel for appellee certainly do not intend to argue that, under this rule, it is necessary to set out all the testimony introduced, in order to show that something was not proved that would render the objections made unavailing. Such a construction would abrogate the rule itself. Its object was to prevent the necessity of sending up all the evidence whenever the legal points involved could be presented without that unnecessary labor and expense; to make the practice conform to that which has always obtained in the federal courts, affording relief not only to the parties and their counsel, but to the courts as well. In support of their contention, counsel cite 44 Ark. 74, and 54 *id.* 159. In the latter case the bill of exceptions evidently was prepared under the old practice, which is still optional. In the former, the bill of exceptions was prepared before Rule 13 was adopted. The presumption under the rule must be that, in the absence of any other showing, the evidence did not invalidate the facts stated so far as to annul the exceptions reserved, and that the court below would not thus authenticate for this court points of law that did not actually arise. That court must only outline the facts

so as to show that such points were not impertinent. None of the cases cited by appellant go so far as contended. See 105 Mass. 105; 8 Met. 552; 100 Mass. 176; 41 Me. 565; 19 Ark. 650; 26 *id.* 322; 10 *id.* 53; 11 *id.* 478; 20 *id.* 270; 11 *id.* 411; 13 *id.* 599; 21 *id.* 254; Wait, Fraud. Conv. sec. 395.

WOOD, J. This was an action for damages growing out of an alleged illegal seizure of personal property which appellant claimed belonged to him, and was unlawfully levied upon and taken out of his possession by appellee, under writs of attachment from the United States court, commanding appellee, as United States marshal, to attach and safely keep the property of Martin Bros.

Appellee admitted the levy upon part of the property described in appellant's complaint, but denied that it was the property of appellant, or in his possession when levied upon; says that he was not a party to nor bound by the attachment proceedings; that the writs were in due form; and that the property levied upon belonged to Martin Bros. He denies the loss and damage.

Martin Bros., insolvent merchants at Reyno, Ark., on the 29th day of December, 1891, sold their stock of goods and certain other articles of personal property to one B. F. Bowden, the appellant. The consideration for the purchase was $4500, evidenced by various promissory notes. H. T. Simon-Gregory & Co. and Shafer, Schwartz & Co. were creditors of Martin Bros. for large sums, which had accrued before the sale from Martin Bros. to Bowden. Martin Bros. assigned two of the Bowden notes—one for $325 to H. T. Simon-Gregory & Co., and another for $275 to Shafer, Schwartz & Co.—as collateral security. These firms did not know, at the time the notes were received by them, that said notes were given as a part of the price of the property

sold by Martin Bros. to Bowden. Their collecting agent, however, received information as to the sale, and all the circumstances connected therewith, on the 7th day of January, 1891. On the 12th day of January, 1891, this agent, at the instance of Simon-Gregory & Co. and Shafer, Schwartz & Co., brought suits in the United States court for the eastern district of Arkansas, H. T. Simon-Gregory & Co. and Shafer, Schwartz & Co. being the plaintiffs, and Martin Bros. the defendants. Writs of attachment were issued on same day suits were brought, based on the sale of Martin Bros. to Bowden, which the plaintiffs in attachment claimed was fraudulent as to creditors. These were the writs under which appellee seized the property for which damage is sought in this action. The attachments were dissolved on the 6th day of March, 1891. The notes of Bowden, which had been transferred by Martin Bros. to H. T. Simon-Gregory & Co. and Shafer, Schwartz & Co., had never been returned, but were in possession of Muse, their collecting agent, and were referred to and exhibited on the trial of the issue on the attachments.

1. The court over the objection of appellant gave the following instruction: "(7) If the jury believe from the evidence that Martin Bros. delivered two of the notes executed by Bowden, as consideration for the sale of the property to Simon-Gregory & Co., and Shafer, Schwartz & Co., without notifying them that they were the proceeds of a sale of the property to Bowden, and that Simon-Gregory & Co. and Shafer, Schwartz & Co. did not, at the time of receiving and accepting said notes, have information or knowledge that the said notes were the proceeds of a sale to Bowden of the property afterwards attached, then they were not estopped from causing the attachment to issue." And refused to give the following, asked by appellant, to which ruling he also objected: "(3) If the jury find that said sale was fraudu-

lent in law because of its tendency to cheat, hinder or delay the creditors of Martin Bros., still the sale would be good as between the parties to that sale, and could only be set aside on the intervention of creditors, and such creditors might waive their right to attack said sale; and if the jury further find that, after making said sale, Martin Bros. sent the attaching creditors notes that were given by Bowden for a part of the price of the property thus bought by him, and that they, or their agent acting for them in that behalf, knowing that said notes were given for a part of said price, have retained said notes until the present time, then they were estopped from maintaining their said attachments, and they must be considered as having ratified said sale; and, as between them and said Martin Bros. and said Bowden, the property thus sold was the property of the said Bowden, and was not the property of Martin Bros., and was therefore not subject to attachment in favor of said attaching creditors; and if the jury find that said attachments in favor of H. T. Simon-Gregory & Co. and Shafer, Schwartz & Co. were levied on said property for the debt of Martin Bros. under these circumstances, then said levy was illegal, and they will find for the plaintiff in this suit."

**1. As to setting out evidence in bill of exceptions.**

It is insisted that the court was correct, for two reasons: (1) Because of a failure to set out all of the testimony, and (2) Because of inherent defects in the instruction refused.

The bill of exceptions begins thus: "Be it remembered that, on the trial of this cause, evidence was introduced tending to show the following state of facts." Rule 13 of this court relieves of the burden and expense of setting out the testimony *in extenso*. That is no longer required in civil cases or misdemeanors. But, to keep this court from indulging the presumption that all facts necessary to establish the correctness of the rulings of the lower court were proved that could have

been proved, the bill of exceptions must show affirmatively that it contains a statement of all the facts required to explain the rulings of the trial court upon the issues involved. This is essential now; just as it was formerly necessary, where the evidence was fully set out, to say: "This was all the testimony in the case." The statement "that evidence was introduced tending to show the following state of facts" would by no means be conclusive that there were not other facts shown on the trial which, if brought before us, would sustain the rulings and judgment of the lower court. It must not be left for us to say by implication that there were no other facts shown. We should decline, therefore, to reverse for the refusal to give the third instruction, even if it was correct; for we are unable to say from the record that there was not testimony produced at the trial which rendered the giving of the instruction either unnecessary or improper. For instance, if the plaintiffs offered to return or surrender the notes before bringing the attachment suits, or at the trial, and Martin Bros. refused to accept same, the above prayer would have no place in the case.

Upon the hypothesis that the bill of exceptions contained a statement of all the facts necessary to explain the ruling of the court in refusing it, was the prayer correct?

2. As to rescission of a fraudulent sale.

In the case of *Millington* v. *Hill*, 47 Ark. 309, it is held that "a conveyance to defraud creditors is good as between the parties and their privies, although it may be avoided by the creditors of the fraudulent grantor. If the creditors condone the fraud, the grantee's title is good against all comers, and when any creditor, with knowledge of the wrong that has been done him, makes his election to take from the grantee the purchase price of the land, his conduct is, in effect, an affirmance of the sale, and a waiver of the right to complain of the fraud."

The principle here announced is elementary, and is as applicable to this case as to the one in which it was announced, although the facts are different. If the attaching creditors, with knowledge of the fraudulent sale, elected to take the notes given for the purchase price of the goods bought, their conduct would be, in effect, an affirmance of the sale, a condonation of the fraud. *Thompson* v. *Peek*, 115 Ind. 512. It is urged, however, that, instead of an election to take the notes, the attaching creditors, by issuing their attachments, were proceeding in the most vigorous and emphatic way to disaffirm the fraudulent sale, and to announce their intention of taking nothing under it. But, in the absence of a return of or offer to return the notes, or a showing that such was impracticable or impossible, how are we to know that it was not their double purpose to hold on to the fruits of the fraud with one hand, while attempting to uproot the tree that bore it with the other? *Sumner* v. *Parker*, 36 N. H. 449. Our own court has long ago announced the rule that a party defrauded must, "within a reasonable time after the fraud is discovered, elect to rescind, if such be his purpose. And he can only rescind by returning, or offering to return, whatever he may have received, under the contract, of value to either party." *Desha* v. *Robinson*, 17 Ark. 240; *Seaborn* v. *Sutherland*, *id.* 603; *Bellows* v. *Cheek*, 20 *id.* 438; *Hynson* v. *Dunn*, 5 *id.* 395; *Davis* v. *Tarwater*, 15 Ark. 286; *Johnson* v. *Walker*, 25 *id.* 204; *Benjamin* v. *Hobbs*, 31 *id.* 151; *Merritt* v. *Robinson*, 35 *id.* 483; *Hanger* v. *Evans*, 38 *id.* 334; *Berman* v. *Woods*, 38 *id.* 351. To the same effect, see *Farwell* v. *Hanchett*, 9 N. E. Rep. 58, S. C. 120 Ill. 573; *Bowen* v. *Schuler*, 41 Ill. 192; 8 A. & E. Enc. p. 850, and other cases there cited; *Johnson* v. *McLane*, 43 Am. Dec. 102. And the general rule is that such return, or offer to return, must be before the bringing

of suit. There are, however, some well settled exceptions, even as firmly established as the rule itself. One is where the vendor who seeks to rescind for fraud has received nothing but the notes of the vendee in payment. In such a case, if the vendor can and does produce them at the trial for return to the vendee, or for cancellation, it is held sufficient. *Wood* v. *Garland*; 58 N. H. 154.

If the notes are non-negotiable, a return, or offer to return, at the trial is all that is necessary; or where the notes are negotiable, and still in the possession of the vendor, if offered or tendered back at the trial, it is sufficient to enable the vendor to maintain his suit. If the notes are negotiable, and not surrendered at the trial, the presumption would be they had been negotiated, and no action to rescind could be maintained. *Thurston* v. *Blanchard*, 22 Pick. 18; *Emerson* v. *McNamara*, 41 Me. 565; *Bassett* v. *Brown*, 105 Mass. 551; *Thayer* v. *Turner*, 8 Met. 552; *Bartlett* v. *Drake*, 100 Mass. 176. See, also, *Dayton* v. *Monroe*, 47 Mich. 193; 21 A. & E. Enc. Law, p. 87, and authorities cited in addition to those *supra*.

The case at bar comes within the spirit, if not the letter, of the above exception. Under our statute (Mansfield's Dig. sec. 473), promissory notes are assignable; but the record shows that the attaching creditors, to whom the notes had been assigned as collateral security, still had them in their possession at the trial of the attachment issue. They were exhibited there, and referred to; and had these notes been tendered and surrendered to the defendants there, they would have been placed *in statu quo* as to the notes, and the attachments, in that event, should not have been dissolved for failure to return or offer to return them before suit.

It follows, from what we have said, that instruction numbered three needed this qualification after the words "they were estopped from maintaining their said attach-

ments," to-wit, "unless they had offered to return the notes before bringing suit, or at the trial, and said offer had been rejected." This modification would have made the instruction complete. It was not error, therefore, to refuse it, for such proof is presumed, in the absence of a showing to the contrary.

The seventh is erroneous. Knowledge of the fraudulent transaction was necessary on the part of the attaching creditors before they could be held to have ratified the same by receiving or accepting the notes, and failing to return or to offer to return them. But such knowledge, in order to estop them, did not have to be coeval with the receiving and accepting the notes, as seems to be the view presented by the instruction. It will be observed, from what has already been said, that it was the duty of the attaching creditors, if they designed to rescind the alleged fraudulent sale, to proceed to do so by offering to return or returning the notes received by them as the result of such sale, within a reasonable time after discovering the alleged fraud, whether such knowledge came to them at the time of receiving the notes or not. And a failure to do so before issuing the attachments, under the general rule, would estop them from maintaining said attachments.

The attaching creditors in this particular case, however, coming within the purview of the exception to the rule, could have maintained their attachments, although they failed to tender back the notes before issuing the attachments, provided they did so, or offered to do so at the trial. The testimony, so far as this record discloses, reveals an imperfect effort on the part of the attaching creditors to repudiate the sale. Had there been a return of, or offer to return, the notes before bringing suit, or at the trial, their disaffirmance would have been complete. The presumption is this was done, and hence there is no prejudicial error in the giving of the seventh

prayer of appellee. *McKinney* v. *Demby*, 44 Ark. 74; *Railroad Co.* v. *Amos*, 54 Ark. 159.

3. As to using writing to refresh memory.

2. On the trial of this cause, witness Bowden referred to a memorandum purporting to contain a list of the property bought from Martin Bros. When asked by defendant's counsel who made out the memorandum, he replied, one of the firm of Martin Bros., but that he was satisfied from his own knowledge that it was correct. The court refused, over appellant's objection, to allow the witness to refer to said memorandum to refresh his memory. This was error. The witness, being satisfied from his own knowledge of the correctness of the memorandum, and proposing to use it only for the purpose of refreshing his memory, speaking as to the facts from his own recollection of them, could use the memorandum to refresh his memory. The writing does not have to be an original writing, or made by the witness, when it is proposed to use it only for the purpose of refreshing the memory of the witness. 1 Greenleaf, Ev. sec. 436. Appellant could not have been prejudiced by this ruling, however, since his complaint purported to set forth all the articles bought by him of Martin Bros. which had been lost or damaged, and his answer admitted that part of this property was levied upon, and the bill of exceptions says "that the proof tended to show that the property levied upon was damaged." Yet the verdict of the jury was against appellant for every thing, showing that their verdict must have been upon the theory that appellant was not the owner of the property, or that the sale was fraudulent.

4. When declarations of vendor admissible against vendee.

3. The second assignment of error—that the court allowed "witness Muse to state conversations had between him and Joe N. Martin with regard to the value of the goods and other properties sold after the date of the sale made from Martin Bros. to Bowden and the reasons for making said sale"—is not well taken.

The contention in the lower court seems to have been that, if the sale from Martin Bros. to Bowden was fraudulent as to creditors, appellee was not liable. The proof was principally directed to the issue of the rightful or wrongful suing out of the attachments under which the levy was made. To avoid the sale for fraud, it was necessary to show that Martin Bros. sold with the fraudulent intent to cheat, hinder, etc., that being the ground alleged. What one of the parties to the fraudulent transfer said about his connection with it, made either before or after the sale, would certainly be admissible if it tended to throw any light upon the character of the transaction. *Dyer* v. *Taylor*, 50 Ark. 318; *Gauss* v. *Doyle*, 46 Ark. 127.

Finding no prejudicial error, the judgment of the Pulaski circuit court is affirmed.

Opinion on rehearing.

WOOD, J. 1. The appellant asked for an instruction numbered three, which the court refused. The presumption is the court was correct until the contrary is made to appear. The presumption is, in other words, that there was evidence of a tender of the notes to defendants in attachment by the attaching creditors, and a refusal to accept same, or that some other fact was shown which rendered the giving of the instruction improper or unnecessary. (Same will apply to instruction numbered seven, given). Yet the appellant does not set out in his bill of exceptions, any of these things which we must presume were proved in order to sustain the lower court's ruling. Nor does he make it appear that such facts were not proved, by the simple statement "that the facts set forth in the bill of exceptions were all that were necessary to explain the bearing of the ruling of the lower court upon the question involved." As long as this court holds that it is necessary to state, "This

was all the evidence in the case," in a bill of exceptions which sets out the evidence in detail, consistency requires that it also hold that a bill of exceptions which only purports to set forth the effect of the evidence should set forth every fact necessary to explain the bearing of the court's rulings upon the questions involved. If such a statement is necessary in the first, in order to negative the fact that there was other proof on the trial showing the correctness of the court's ruling, it is equally necessary in the last, for the same purpose. A majority of the court is unwilling to change the rule of construction which has been adhered to by this court almost since its organization, and hence are of opinion that the construction placed upon Rule 13 is correct. Nor will the profession find it difficult to follow this construction. When the framer of a bill of exceptions has stated all the facts which the evidence tended to show, deemed necessary to present the rulings of the court, a statement to the effect "that it contains all that is necessary to explain the bearing of the court's ruling" will be sufficient. This will obviate the necessity of setting out anything more, and will overcome the presumption that other facts were shown.

2. Upon the second point—that this court erred in sustaining the ruling of the lower court "permitting the declarations of one of the firm of Martin Bros. with regard to the value of the goods and other properties sold, made after the sale, to go to the jury"—counsel say of the opinion of the court: "The principle is stated in this case *for the first time* that, after a sale, the vendee is still at the mercy of his vendor, who can impeach his title by anything he may say to any one." The court, of course, had in view, but neglected to state, *that the vendor, Martin, was still in possession when these statements were made*, and that the bill of exceptions recited: "*that there was evidence tending to show that the sale*

*of goods made by Martin Bros. to Bowden was fraudulent in law and in fact.*" This omission of the court, we apprehend, gave rise to the contention of counsel, and all they have seen proper to say on this point in their motion for reconsideration. We cite to support the announcement made by the court the following authorities. In *Cox* v. *Vise*, 50 Ark. 287, it it said "that when a fraudulent combination is established, the acts and declarations of any of the parties thereto, while engaged in the prosecution of the common design, may be proved against the others. They are competent evidence to show the intention of the parties." See the case and authorities there cited. In the case at bar the fraudulent combination was sufficiently established, as it appears from the statement in the bill of exceptions "that the evidence tended to show the sale *fraudulent in law* and in fact."

In *Oatis* v. *Brown*, 59 Ga. 711, it is held "that so long as a debtor remains in possession of property which once belonged to him, and which his creditor is seeking to condemn as fraudulently conveyed, the *res gestæ* of the fraud, if any, may be considered as in progress, and his declarations, though made after he has parted with the formal paper title, may, by reason of the continuous possession which accompanied them, be given in evidence for the creditor against the claimant. If there was a fraud perpetrated, it was not at an end so long as Oatis (the vendor) remained in possession." See cases and authorities cited.

Mr. Rice in his work on Evidence (p. 950) says: "A debtor who has transferred his property, as it is alleged, in fraud of creditors, and after such transfer still retains the ostensible and apparent possession of the property, may bind his grantee by his declarations. The presence, in such a case, of the indicia of fraud does away with the presumptions and legal intendments that otherwise

surround a *bona fide* grantee, who becomes infected with the same suspicion that surrounds the grantor." The author cites the following among other cases, which, we find support the text: *United States* v. *Griswold*, 8 Fed. Rep. 556; *Newlin* v. *Lyon*, 49 N. Y. 661; *Pomeroy* v. *Bailey*, 43 N. H. 118; *Babb* v. *Clemson*, 10 S. & R. 419; *Marsh* v. *Hampton*, 5 N. C. 382; *Goodgame* v. *Cole*, 12 Ala. 77; *Carney* v. *Carney*, 7 Bax. (Tenn.) 284; *Blake* v. *Graves*, 18 Ia. 312; *Carrollton Bank* v. *Cleveland*, 15 La. An. 616; *Askew* v. *Reynolds*, 1 Dev. & Battles, 367; *Redfield* v. *Buck*, 35 Conn. 328; *Cahoon* v. *Marshall*, 25 Cal. 197; *Avery* v. *Clemons*, 18 Conn. 306; *Grant* v. *Lewis*, 14 Wis. 487; *Wilbur* v. *Strickland*, Rawle's Rep. 458.

Mr. Wait on Fraudulent Conveyances, at sec. 279, says: "As proof of continued possession of the vendor is competent evidence to impeach the supposed transfer, it would seem to follow that any acts or declarations of the possessor while retaining the property must also be competent as characterizing his possession." "So long as the debtor remains in possession, the *res gestae* of the fraud may be considered as in progress." "The declarations are received in such cases upon the ground that they show the nature, object, or motives of the act which they accompany, and which is the subject of inquiry. See, also, *Ib.* sec. 280; 1 Wharton on Ev. 1166; Bump, Fr. Conv. p. 588—to same effect. It is doubtful if any authority of any respectability can anywhere be found to the contrary. The consensus of opinion, as announced by text writers and the adjudicated cases, we think, supports the view announced by the court in the opinion. The motion for reconsideration is therefore denied.