VOLUSIA COUNTY BANK, PLAINTIFF IN ERROR, VS. MARION
L. BIGELOW, DEFENDANT IN ERROR.

1. Section 1116 of the Revised Statutes, which provides for the
propounding of interrogatories in writing to the opposite
party upon any matter as to which discovery is sought
and requires such party to file in the court in which the
cause is pending written answers under oath to such in-
terrogatories, does not authorize the propounding of such
interrogatories (1) as seek exclusively for the case of the
other side; (2) as are of a merely fishing character; (3)
as are not reasonably relevant to the issue; (4) as are
unnecessary or useless; (5) as seek to establish a forfeit-
ure strictly so called; (6) as seek to contradict a written
instrument; and (7) as are privileged upon grounds of
public interest.

2. Interrogatories may be admissible under said section (1)
the answers to which may expose other persons to ac-
tions; (2) the answers to which may expose the party in-
terrogated to penalties; (3) where a defendant in eject-
ment seeks to discover the character in which the plain-
tiff claims, and the pedigree upon which he relies; (4)
that seek secondary evidence of lost written documents;
(5) that inquire into confidential communications that the

party interrogated would not be privileged from disclosing upon oral examination; (6) that seek to disprove the bona fides of a prima facie defence, or to show that the defendant has acted fraudulently.

3. Where a large number of interrogatories are propounded under said section to one of the parties to the action and the entire series is objected to upon the sole ground that they are improper and illegal and not comprehended within the statute, and certain specified interrogatories are objected to upon the further ground that they are irrelevant, incompetent and immaterial, and the court sustains the objection to the entire series, it must be assumed that the ruling was based on the ground of objection to the entire series, as the fact that some of such interrogatories might be objectionable could afford no basis for refusing to answer the others, and it was error to sustain such objection to the entire series, if any of said interrogatories were competent.

4. It was competent for plaintiff to propound interrogatories to claimant seeking for affirmative evidence to disprove the bona fides of her claim or to rebut a prima facie title asserted by her, by establishing fraud, and, as some of such interrogatories sought to elicit this evidence, they were competent for that purpose; hence it was error to sustain the objection to the entire series.

5. In passing upon specific objections to particular interrogatories, such objections should be determined in view of the rule that a wide latitude is allowed in the range of examination for the purpose of proving fraud, and in view of the fact that the statute was designed to enable a party, if he can, to secure admissions from his adversary, in advance of the trial, for the purpose of relieving himself from the necessity of adducing evidence to prove any particular thus admitted.

6. In claim proceedings the right of property which the jury is to try is an issue of superiority as between the right of the plaintiff in execution to subject the chattel or property involved to the satisfaction of his writ, and the claimant's title, on the other hand, as against such right; an

Volusia County Bank v. Bigelow—Syllabus.

issue of the liability of the property to the plaintiff's execution as against the claimant's title; hence it was error to administer an oath to the jury, as was done in this case, to the effect that they were to try the right of property between the claimant and the defendant in execution.

7. A memorandum made at or about the time of the happening of the transaction may be referred to by a witness for the purpose of refreshing his recollection, but there is a clear and obvious distinction between the use of a memorandum for the purpose of stimulating the memory, and its use as a basis for testimony regarding transactions as to which there is no independent recollection. It is also essential that the witness should produce and testify by reference to the original memorandum, or satisfactorily account for i.s absence, before resort can be had to a copy.

8. The opposite party has a right to see and examine the memcrandum used by a witness so as to be in a position to cross-examine the witness in regard to the testimony given on direct examination.

9. A wide latitude is permitted in seeking evidence of fraud, and especially should extreme latitude be on the cross-examiration of a party asserting title under a sale alleged to be fraudulent. Positive proof of fraudulent acts is not generally to be expected, and where, from necessity, resort must be had to circumstantial evidence. objections to testimcny on the ground of irrelevancy or immateriality are not favored. Circumstances altogether inconclusive, if separately considered may, by their number and jcint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof. The cnly true test is whether the evidence can throw light on the transaction or whether it is altogether irrelevant.

10. Where the ordinary bill of exceptions fails to show at what stage of the proofs certain evidence was offered or for what purpose and the grounds upon which the introduction of such evidence was objected to and the grounds upon which the same was excluded, we can not presume error in the exclusion of such, evidence.

11. It is within the discretion of the trial court 'to permit the introduction of affirmative testimony in support of a party's case, after such party has rested and the testimony of his adversary has been concluded.

12. Where assignments of error are based upon the refusal of the trial court to give certain requested charges, and none of said charges are accomplished by a brief statement of the material proofs pertinent to the charge, as a predicate therefor, and no charge is of such a nature as would justify an appellate court in presuming prejudicial error in respect thereof, in the absence of such a statement showing the predicate of fact upon which the charge was requested, none of said assignments of error can be considered.

This case was decided by Division A.

Writ of Error to the Circuit Court for Volusia County.

The facts in the case are stated in the opinion of the Court.

*Isaac A. Stewart* (with whom was *Egford Bly* on the brief) for Plaintiff in Error.

*Beggs & Palmer,* for Defendant in Error.

JAMES F. GLEN, Commissioner.

It appears from the abstract in this case that the defendant in error filed a claim affidavit asserting that certain personal property levied upon under execution against her husband, J. E. Bigelow, belonged to her as her separate property, and upon trial the jury found in her favor.

40 S. C.

The first assignment of error relates to the action of the court in sustaining exceptions of defendant in error to a series of eighty interrogatories propounded to her before the trial, for the purpose of obtaining discovery from her under the provisions of section 1116 of the Revised Statutes, which provides as follows: "In all causes in any of the courts of this State either party may, at any time, deliver to the opposite party, or his attorney, interrogatories in writing upon any matter as to which discovery may be sought, and require such party, or in case of a body corporate, any of the officers of such body corporate, within ten days, to file in the court in which the cause is pending, written answers under oath to such interrogatories. Such answers shall be evidence against, but not for, the party making them. A failure to answer such interrogatories shall be deemed a contempt of court." Section 589, the pleading and practice act of 1861, of which the above section is a substantial re-enactment (with some changes not material now) was almost a literal copy of section 51 of the English common law procedure act of 1854, the only substantial change being that the latter required the "order of the court or a judge" as a prerequisite to the propounding of interrogatories, while the former did not. In Day's Common Law Procedure under the procedure acts (4th ed.) pages 305-309, the decisions under the English act are collated, and the following rules announced: Such interrogatories are not within the section (1) as seek *exclusively* for the case of the other side; (2) as are of a merely fishing character; (3) as are not reasonably relevant to the issue; (4) as are unnecessary or useless; (5) as seek to establish a forfeiture strictly so called; (6) as seek to contradict a written instrument; and (7) as are privileged upon grounds of

public interest. But interrogatories may be admissible (1) the answers to which may expose other persons to actions; (2) the answers to which may expose the party interrogated to penalties; (3) where a defendant in ejectment seeks to discover the character in which the plaintiff claims, and the pedigree upon which he relies; (4) that seek secondary evidence of lost written documents; (5) that inquire into confidential communications that the party interrogated would not be privileged from disclosing upon oral examination; (6) that seek to disprove the *bona fides* of a *prima facie* defence, or to show that the defendant has acted fraudulently. The only objection urged in this case to the entries series of interrogatories was "that the questions propounded are improper and illegal and not comprehened within the statute." There was in addition an objection to certain designated interrogatories that they were "irrelevant, incompetent and immaterial," but the court sustained the objection to the entire series, and it must, therefore, be assumed that the ruling was based on the ground of objection to the entire series, as the fact that some interrogatories might be objectionable could afford no basis for refusing to answer the others. Dalgleish v. Lowther, L. R. 2 Q. B. Div. (1899) 590. The purpose of the interrogatories evidently was to secure evidence from the claimant to disprove the *bona fides* of her alleged ownership of the property claimed by her, and that, we think, was a legitimate object of discovery. In seeking to elicit evidence for that purpose, plaintiff in execution was not seeking exclusively for a disclosure of claimant's case, but for affirmative evidence to disprove the *bona fides* of that claim or rebut a *prima facie* title asserted by her, by establishing fraud, so that the case was within the rule stated by Day as set forth

above. Bayley v. Griffiths, 1 H. & C. 429; Blight v. Good-liffe, 18 C. B. (N. S.) 757; Todd v. Bishop, 136 Mass. 386; Wilson v. Webber, 2 Gray, 558. To the extent indicated it was competent for the plaintiff in execution to interrogate the claimant, and the court erred in sustaining claimant's objection to the entire interrogatories. It is neither necessary on this writ of error, nor would it be profitable, to pass upon the propriety of each of the eighty interrogatories submitted. That can be done in the court below in the future progress of the cause, if specific objection is made to any particular interrogatories; and such objections, if any, should be determined in view of the rule that a wide latitude is allowed in the range of examination for the purpose of proving fraud, and in view of the fact that the statute was designed to enable a party, if he can, to secure admissions from his adversary, in advance of the trial, for the purpose of relieving himself from the necessity of adducing evidence to prove any particular thus admitted. Attorney-General v. Gaskill, L. R. 20 Ch. Div. 519; Baker v. Carpenter, 127 Mass. 226; Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g. Co., 27 Fla. 1, 9 South. Rep. 661.

II. The next assignment of error relates to the oath administered to the jury, to which exception was taken by plaintiff in error. The oath was as follows: "You, and each of you, do solemnly swear that you will well and truly try the right of property between Marion L. Bigelow, the claimant, and J. E. Bigelow, defendant in execution, and a true verdict render according to the evidence; so help you God." Objection was made to the oath on the ground that it did not correctly advise the jury as to the issues, informed them that J. E. Bigelow was a party to the suit, and was misleading. It was said in the case of

Baars v. Creary, 23 Fla. 311, text 315, 2 South. Rep. 662, that "the right of property which the jury is sworn to try is an issue of superiority as between the right of the *plaintiff in execution* to subject the chattel to the satisfaction of his writ, and the claimant's title on the other hand, as against such right; an issue of the liability of the property to the plaintiff's execution as against the claimant's title." The case of Moody v. Hoe, 22 Fla. 309, is to the same effect. It follows that the oath administered did not correctly advise the jury as to the issue on trial. Instead of advising the jurors that the issue was as to the superiority of the right of the plaintiff in execution, on the one hand, and the claimant on the other, it advised them that they were to "try the right of property between Marion L. Bigelow, the claimant, and J. E. Bigelow, *defendant* in execution," which was a question foreign to the issue. As between the claimant and the defendant in execution the right of property might be in the former, while at the same time the property might be subject to execution against the deefndant in execution. The grantee in a conveyance designed to defraud creditors acquires a good title as against the grantor, and yet such title is not good as against an execution against the former. Kahn v. Wilkins, 36 Fla. 428, 18 South. Rep. 584; Bellamy v. Bellamy, 6 Fla. 62; Mayer v. Wilkins, 37 Fla. 244, 19 South. Rep. 632.

III. The third assignment of error is that "the court erred in permitting the claimant's witness, Marion L. Bigelow, to read to the jury memoranda of sums of money claimed by witness to have been advanced by her to her husband, J. E. Bigelow." The bill of exceptions recites that claimant claimed to have advanced various sums to her husband during the years from 1891 to 1897, inclusive,

and to have made memoranda of those sums; that a memorandum in her hand was made the day before from memoranda she had previously made, none of which were made from memory. When asked to give the amount advanced in each year witness "commenced to read from memorandum in her hand." Plaintiff in execution thereupon objected to witness reading said memorandum on the grounds that it was not of itself competent evidence, and that it was made the day preceding her testifying and not at the time of the transaction. The bill of exceptions states that "these objections were overruled and witness permitted to read from said memorandum, to which rule plaintiff in execution excepted." We think this sufficiently shows that the memorandum was not used by the witness for the mere purpose of refreshing her independent recollection, but that she relied on the memorandum as the basis of her testimony. There is a clear and obvious distinction between the use of a memorandum for the purpose of stimulating the memory, and its use as a basis for testimony regarding transactions as to which there is no independent recollection. In the former case it is immaterial what constitutes the spur to memory, as the testimony when given, rests solely upon the independent recollection of the witness. In the latter case, the memorandum furnishes no mental stimulus, and the testimony of a witness by reference thereto derives whatever force it possesses from the fact that the memorandum is the record of a past recollection, reduced to writing while there was an existing independent recollection. It is for that reason that a memorandum, to be available in such cases, must have been made at or about the time of the happening of the transaction, so that it may safely be assumed that the recollection was then sufficiently fresh to correctly express it. The assumed reliability of the mem-

orandum as a contemporaneous record is the soul justifi-
cation of its use by the witness, and hence it is essential
in such cases that the witness should produce and testify
by reference to the original memorandum, or satisfactori-
ly account for its absence, before resort can be had to a
copy. Doe *ex dem* Church v. Perkins, 3 Term Rep. 749,
text 754; Stanwood v. McClellan, 48 Me. 275; Adae & Co.
v. Zangs, 41 Iowa, 536; 1 Greenleaf on evidence (16th ed.)
439b; Abbott's Trail Evidence (2nd ed.) 396; 8 Ency. Pl.
& Prac., 142. It follows that the court erred in permit-
ting the claimant to testify from the copy in question as
to the sums alleged to have been advanced by her to her
husband. This also disposes of the fourth assignment
of error, which is based on the same ruling.

IV. The sixth assignment of error properly falls to be
considered in connection with the third and fourth. It
alleges that the court erred in denying the request of
plaintiff in execution for the privilege of examining the
memoranda from which the claimant testified, after she
had testified therefrom. This ruling was erroneous.
Plaintiff in execution had a right to examine the memo-
randa used by the witness, so as to be in a position to
cross-examine her in regard to her testimony. Rex. v.
Ramsden, 2 C. & P. 603; Avery v. Ryerson, 34 Mich. 369;
Tibbetts v. Sternberg, 66 Barb. 201; Commonwealth v.
Jeffs, 132 Mass. 5; 1 Greenleaf on Evidence, Sec. 439c;
6 Ency. Pl. & Prac. 143.

V. The fifth assignment of error alleges error in ex-
cluding certain testimony sought to be elicited from Mrs.
Bigelow on cross-examination. The bill of exceptions
states that she testified on cross-examinnation "that she
knew that Mr. Bigelow had put in his pleas in the suits
of the bank against him, and she did not expect any execu-
tions to issue; that he had tried to borrow the money and

she thought he might succeed in doing so; that they expected due notice, but his pleas were thrown out without notice, and had notice been given she would have removed the goods. Plaintiff in execution then asked her whether she did not know those pleas were put in for the purpose of enabling her to gain time to remove the goods before the issue of executions. Claimant objected on the ground that it was immaterial and irrelevant. The objection was sustained and exception taken." The court erred in excluding this testimony. Of necessity a wide latitude is permitted in seeking evidence of fraud (C. B. Rogers Co. v. Meinhardt, 37 Fla. 480, 19 South. Rep. 878), and especially should extreme latitude be permitted on the cross-examination of a party asserting title under a sale to her, alleged to be fraudulent. Miller v. Hanley, 94 Mich. 253, 53 N. W. Rep. 962; Nicolay v. Mallery, 62 Minn. 119, 64 N. W. Rep. 108; Cohen v. Goldberg, 65 Minn. 473, 67 N. W. Rep. 1149; Cox v. Einspahr, 40 Neb. 411, 58 N. W. Rep. 941; Wait on Fraudulennt Conveyances, Sec. 281; 14 Am. & Eng. Ency. of Law (2nd ed.) 493. Positive proof of fraudulent acts is not generally to be expected, and where, from necessity, resort must be had to circumstantial evidence objections to testimony on the ground of irrelevancy or immateriality are not favored. "Circumstances altogether inconclusive, if separately considered may, by their number and joint operation, especially when corroborated by moral coinncidences, be sufficient to constitute conclusive proof." Castle v. Bullaru, 23 Howard, 172, text 187; Sarle v. Arnold, 7 R. I. 582; Wait on Fraudulent Conveyances, *supra;* Bump on Fraudulent Conveyances (4th ed.) Sec. 590, 591. In the case of Zerbe v. Miller, 16 Pa. St., 488, text 495, it is said: "Fraud assumes so many shapes, disguises and subterfuges, that courts always afford a latitude of evidence, by

admitting anything at all connected with the transaction in which it is alleged to exist, in order that it may be detected and exposed, for the safety of society and the benefit of morals. This latitude can never injure an honest man. Covin and deceit avoid the light; but fair dealing invites investigation. *The only true test is whether the evidence can throw light on the transaction or whether it is altogether irrelevant."*

VI. Tested by the rules stated in the preceding section of this opinion we think the claimant should have been required to answer the question "whether she would have insisted upon Mr. Bigelow paying her at this time if it had not been for her fears that the creditors were going to press him and close up the business," and also the question "whether if Francis Bigelow (sister of defendant in execution and surety on his note to the bank) had desired or been willing for the matter to stand would witness have continued the loan to Bigelow and forborne bringing suit and did witness make her that proposition." It can not be said that the evidence sought by these questions would have been altogether irrelevant on the question of the *bona fides* of the sale to her. This disposes of the seventh and eighth assignments of error.

VI. W. H. DaCamara, a witness for claimant, "testified that he was in Mr. Bigelow's employ in June 1897, and in the store every day; that Mr. Bertola frequently came in there, and that he heard Mr. Bigelow tell Mr. Bertola that he had sold the goods. On cross-examination plaintiff in execution asked witness whether he had ever heard Mr. Bigelow and Mr. Bertola discussing what was best to be done with that stock of goods in the store. Claimant objected on the ground that any such discussion was immaterial and irrelevant unless knowledge thereof

was brought home to complainant. This objection was sustained, and plaintiff in execution excepted." The ground of objection urged by claimant, coupled with the ruling thereon, in effect precluded plaintiff in execution from showing, if it could, declarations emanating from, or made to, claimant's husband in respect to the stock of goods, unless knowledge thereof was brought home to her, and we shall dispose of this assignment on the theory that such was the ruling of the court, although the mere exclusion of the proposed question would not, of itself, have been prejudicial to plaintiff in execution, as it would have admitted of an answer merely in the affirmative or negative, and, without more, could scarcely have thrown any light on the transaction. The court erred in refusing to admit the testimony on the ground urged for its exclusion. It must be assumed that the discussions inquired about occurred either anterior to the alleged sale, or, at least, while Bigelow, claimant's husband, retained possession and control over the goods, so as to be in a position to govern their disposition, and in either case such testimony was admissible although not brought to the knowledge of Mrs. Bigelow. Wait on Fraudulennt Conveyances, Secs. 277, 279; Bowden v. Spellman, 59 Ark. 251, 27 S. W. Rep. 602; Holmes v. Braidwood, 82 Mo. 610; Bump on Fraudulent Conveyances. Secs. 594, 600.

VIII. The tenth assignment of error is that the court erred in refusing to permit claimant's witness, DaCamara, to testify whether he knew the bank was suing Mr. Bigelow at the time he represented Mrs. Bigelow in taking an inventory of the goods. According to the bill of exceptions it appears that DaCamara had testified that "he assisted in the separation of goods for Mrs. Bigelow on 18th or 19th of June, 1897, and made an inventory of them.

He accepted the agency of the goods from Mrs. Bigelow to handle them on her account, and was her agent from the eighteenth of June up to the fifth of August. Plaintiff in execution asked witness on cross-examination whether at the time he represented Mrs. Bigelow in taking an inventory of the goods he knew the bank was suing Mr. Bigelow. Claimant objected on the ground that the question was immaterial and irrevelant. Objection was sustained and plaintiff in execution excepted." In this ruling we think the court erred. Her agent's knowledge at that time, while so representing her, could be reasonably inferred to have been shared by claimant, and it can not be said that such knowledge on her part at that time was entirely irrelevant.

IX. The eleventh, twelfth and thirteenth assignments of error also relate to questions addressed to Dacamara on cross-examination, alleged to have been excluded by the court, but the abstract fails to show the ruling complained of under the last two of these assignments. The eleventh assignment is based upon the exclusion of a question asking DaCamara "whether he did not as Mrs. Bigelow's agent try to fix things up to get those goods out for the purpose of avoiding the levy on them under an execution against Bigelow." The objection was that the question was incompetent, irrelevant and immaterial. We think the question was one proper to be addressed to the witness on cross-examination, and which he should have been required to answer.

X. The fourteenth and fifteenth assignments of error relate to the exclusion by the court of the summons, declaration, plea, order granting default for want of plea, proof of claim and *praecipe* for judgment in each of the two suits of the Volusia County Bank against Bigelow.

The ordinary bill of exceptions, as abstracted, does not show at what stage of the proofs these documents were offered, nor does it state the purpose for which they were offered, nor the grounds upon which their introduction was objected to, nor the grounds upon which they were excluded. Under these circumstances we can not presume error in their exclusion, although under certain circumstances they might have been properly admissible in evidence. Jacksonville Street Railroad Company v. Walton 42 Fla. 54, 28 South. Rep. 59.

XI. The sixteenth assignment of error relates to the exclusion of Mrs. Bigelow's account on the books of her husband. The witness DaCamara "identified the petty ledger of J. E. Bigelow and an account of Marion L. Bigelow appearing upon page 15 of said ledger. Witness stated that he made most of the entries in this account. That those not made in his hand-writing were made while he was away, from July, 1896, to April, 1897; that he could only testify to the correctness of those made by himself, but as to those he was satisfied they were correct; that the original items were entered in a small sales book and posted from a small blotter; that he did not know whether this was the only money transaction between Mr. and Mrs. Bigelow. Plaintiff in execution then offered in evidence the account which extended from December 18th, 1895, to June 7, 1897, and consisting of debit entries against Mrs. Bigelow of small miscellaneous items aggregating $34.91 and showing credits to nearly balance the account, but containing no entries of money loaned by Mrs. Bigelow." Claimant objected to reading of same in evidence on the ground that she was not bound by the books of J. E. Bigelow." The account should not have been excluded from evidence on the objection urged. It is true the

book might not bind Mrs. Bigelow, but it was proper to be considered by the jury in determining the genuineness of the indebtedness alleged to be the consideration of the sale of the property to her. White v. Benjamin, 150 N. Y. 258, 44 N. E. Rep. 956; Loos v. Wilkinson, 110 N. Y. 195, 18 N. E. Rep. 99. Under this view it is unnecessary to consider the seventeenth assignment of error, which alleges error in permitting the same witness, at the instance of claimant, to testify as to the balance shown due by the account, after excluding it from evidence.

XII. The eighteenth assignment of error is based upon the refusal of the court to permit the claimant to be interrogated as to certain household furniture, beds, bedding, book-cases, books, bureaus, curtains, pictures, stoves, sewing machine, refrigerators, kitchen implements, crockery, tins, enamel-ware, &c., claimed by her as her separate property in a suit for injunction then pending against the Volusia County Bank to restrain the levy of executions thereon as the property of her husband. The bill of exceptions states that plaintiff in execution produced an itemized list of the property aforesaid, and thereupon asked claimant "whether any of said goods had been received by her from and through her husband, and whether they were to be taken as a credit on any amounts of money that had been advanced by her to him." The question was excluded by the court, and an exception taken to the ruling. The court erred in refusing to permit the question. It was obviously pertinent to ascertain whether or not the indebtedness claimed by Mrs. Bigelow had been discharged, in whole or in part, in the manner suggested, and the manner of acquisition of this other property was a legitimate subject of inquiry, relevant to the issue on trial.

XIII. The nineteenth assignment of error is that "the court erred in permitting claimant, after plaintiff in execution had closed its testimony, to introduce direct and affirmative testimony not in rebuttal, and thereupon permitting Eleanor C. Walton to testify that Mrs. Bigelow told her in the early part of July of the purchase of a lot of goods by her from Mr. Bigelow." The sole ground of the objection urged to this testimony in the court below, and in this court, is that it was not testimony in rebuttal, "but was direct, affirmative testimony in support of the claim of claimant." As against the objection urged, the testimony was admissible. It is within the discretion of the trial court to permit the inntrodaction of affirmative testimony in support of a party's case, after such party has rested and the testimony of his adversary has been concluded. Anthony v. State, 44 Fla., 1, 32 South. Rep. 818.

XIV. The twentieth, twenty-first and twenty-second assignments of error relate to charges requested by plaintiff in execution and refused. None of these charges is accompanied in the abstract by a brief statement of the material proofs pertinent to the charge, as a predicate therefor, and no charge is of such a nature as would justify an appellate court in presuming prejudicial error in respect thereof, in the absence of such a statement, showing the predicate of fact upon which the charge was requested. Jacksonville Street Railroad Co. v. Walton, supra; Younglove v. Knox, 44 Fla. 743, 33 South. Rep. 427. For that reason none of these assignments of error can be considered.

XV. The twenty-fourth assignment of error alleges error in the refusal to give the following charge: "If the jury believe from the evidence that any witness has sworn

falsely on this trial wilfully as to any matter or thing material to the issue in this cause, then the jury are at liberty to disregard his or their entire testimony if they see fit to do so." This requested charge is not accompanied by any statement of facts as a predicate therefor,, but *if it had been given,* would have fallen within the exception to the rule requiring a statement of facts, as recognized in the case of Jacksonville Street Railroad Co. v. Walton, *supra,* and the court would in that event have examined it to the extent of determining whether or not it contained a correct statement of a proposition of law. The charge, however, was refused and we do not think, where such a charge *is refused* by the trial court, that an appellate court would be justified in presuming error in such refusal, in the absence of any statement of the facts claimed to have imposed a duty upon the trial court to give it. The charge requested would not be erroneous in a proper case, although it might be more accurate if qualified so as to express the idea that the testimony of such a witness should not be arbitrarily and capriciously rejected, if regarded as credible by the jury, merely for the purpose of finding a verdict contrary thereto. Gantling v. State, 40 Fla. 237, 23 South. Rep. 857. But the charge is not one which the court is required to give to the jury in every case, and when alleged error in refusing such a charge is asserted, the party so asserting error must present a statement of facts making it obligatory upon the court to give such charge in his particular case. In the absence of such a statement, it would not be proper for the appellate court to presume error in the refusal. Ingalls v. State, 48 Wis. 647, 4 N. W. Rep. 785; McCormick v. City of Monroe, 64 Mo. App. 197; State v. Hickam, 95 Mo. 322, 8 S. W. Rep. 252; State v. McDevitt, 69 Iowa, 549, 29 N. W. Rep. 459; Kay v. Noll, 20 Neb. 380, 30 N. W.

Rep. 269; 11 Ency. Pl. & Pr., 341.

XVI. The twenty-fifth assignment of error is disposed of by what has already been said in considering the second, as to the form of oath to be administered to the jury in such cases. The charge objected to under this assignment involved the same misconception of the issue on trial as did the oath administered to the jury, and was erroneous for the same reason.

XVII. The twenty-sixth, twenty-seventh, twenty-eighth and twenty-ninth assignments of error relate to instructions given at the request of claimant, no one of which is accompanied by a brief statement of the matters in evidence pertinent thereto, as a predicate therefor, and no charge is of such a nature that this court could presume prejudicial error in respect of the giving thereof. irrespective of the state of facts disclosed by the evidence. For that reason these assignments of error must be disregarded. Jacksonville Street Railroad Co. v. Walton, *supra;* Younglove v. Knox, *supra.*

XVIII. The abstract fails to show that the court gave the charges requested by claimant last, and after all the charges on behalf of plaintiff in execution had been given, even if such action could be reviewed in this court. The contention that there was error in this respect must, therefore, be disregarded.

XIX. The only other question presented is that the evidence failed to sustain the verdict, and, as there must be a new trial of the cause, it would not be proper to express an opinion on that question at this time.

The judgment should be reversed and a new trial had.

PER CURIAM.

This cause coming on for final hearing, was heretofore

referred by the court to its commissioners for investigation, who reported the same recommending reversal for the reasons set forth in the foregoing opinion prepared by former commissioner Glen. After due consideration of the clause by Division A of the court upon the abstracts of record and briefs of counsel, the court being fully advised of its judgment to be given in the premises, for the reasons stated in the said foregoing opinion, it seems to the court that there is reversible error in the record in said cause; it is, therefore, hereby considered, ordered and adjudged that the said opinion prepared by former commissioner Glen in said cause be, and the same is hereby adopted and ordered to be filed as the opinion of the court in said cause, and that the judgment of the Circuit Court in said cause be, and the same is hereby reversed and a new trial ordered at the cost of defendant in error.